LINCOLN NATIONAL BANK, Appellant
(Defendant Below),

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION
and Lewis F. Koehlinger, Sr., Appellees
(Plaintiffs Below).

No. 2–682A180.

Court of Appeals of Indiana,
Second District.

March 30, 1983.
Rehearing Denied May 20, 1983.

Thomas M. Kimbrough, Fort Wayne, for appellant.

Max A. Myers, Fort Wayne, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Appellant, Lincoln National Bank (Bank), seeks reversal of an Employment Security Review Board (Board) decision which treated a lump sum settlement of a retirement pension fund as income deductible from unemployment compensation benefits only in the week in which it was received by the claimant, Lewis F. Koehlinger, Sr. (Koehlinger).

We reverse and remand.

## FACTS

Koehlinger was informed that, as a result of the Bank's reorganization, his position was being eliminated as of July 1, 1981. At the time of his dismissal, Koehlinger had vested rights in the company's pension plan. He elected to receive the accrued amount of his retirement in a lump sum, and, accord-

ing to the Board's decision, he was also given twelve weeks' severance pay.[1]

On September 21, 1981, Koehlinger filed for unemployment benefits. Both the Deputy and Appeals Referee determined that pursuant to Ind.Code 22–4–15–4(a)(2) (1982) [hereinafter referred to as the pension statute], Koehlinger was receiving pro-rated weekly pension income in excess of his weekly unemployment benefit amount. Therefore, Koehlinger was not entitled to any unemployment compensation benefits. The Board disagreed with the Referee and found that Koehlinger had income deductible from unemployment compensation only in the week in which the lump sum settlement was actually paid.[2]

## ISSUE

█ The question thus raised is as follows:

Does the pension statute require that a lump sum pension benefit be allocated over the life of the pension in order to determine the amount of weekly pension income to be deducted from unemployment compensation benefits?

PARTIES' CONTENTIONS—The Bank asserts that Koehlinger is receiving remuneration with respect to more than merely the single week in which the lump sum payment was made. Koehlinger responds that the lump sum payment is only deductible income in the week it is paid.

## DECISION

CONCLUSION—The pension statute requires that a lump sum pension benefit be

allocated over the life of the pension so that a weekly pension income figure is deducted from unemployment compensation to determine if any benefits are payable.

The language of the pension statute decides this case. In pertinent part it says,

"(a) An individual shall be ineligible for waiting period or benefit rights: *For any week with respect to which the individual receives, is receiving, or has received* payments equal to or exceeding his weekly benefit amount in the form of:

█ *Any pension,* retirement or annuity payments, *under any plan of an employer whereby the employer contributes a portion or all of the money.* This disqualification shall apply only if some or all of the benefits otherwise payable are chargeable to the experience or reimbursable account of such employer, or would have been chargeable except for the application of this chapter. For the purposes of this subdivision (2), federal old age, survivors and disability insurance benefits will be considered payments under a plan of an employer whereby the employer maintains the plan or contributes a portion or all of the money to the extent required by federal law."

(Emphasis supplied).

█ Our analysis begins with two relevant rules of statutory construction. One is *noscitur a sociis,* which means that the meaning of a doubtful word may be ascertained by reference to the meaning of

---

1. Koehlinger did not apply for unemployment compensation benefits until twelve weeks after his termination. Therefore, we need not address the deductibility of severance payments.

2. Although the record does not establish the exact amount of the payment or the date payment was received, Koehlinger's own testimony provides sufficient evidence of payment and receipt to meet the Bank's burden of proof:

 "Q. Alright. You did not opt for retirement?
 A. No, sir.
 Q. You opted to remove your benefit and place it . . .
 A. Just after one day . . .
 Q. . . . in an interest bearing account?

 A. . . . April the 7th, 1981, I was called up to an office of the Controlling Department. They read that letter to me which you have seen . . .
 Q. Um-hum.
 A. . . . and that was it.
 Q. Okay. And then you, with regard to your money, rather than let it lay fallow and no interest, rolled it over into an account that would earn 15½% on it?
 A. That . . . that is correct.
 Q. And that is all you've done?
 A. That is correct.
 Q. You haven't spent any of that money?
 A. No, sir."
 *Record* at 23–24.

other words associated with it. *Bertrand v. Smeekens,* (1973) 156 Ind.App. 572, 298 N.E.2d 25, *trans. denied.* Also, when two or more words are grouped together, the general words will be limited and qualified by the special words. 2A *C.D. Sands, Sutherland Statutory Construction* §§ 47.16, 47.33, at 101, 159 (1973). Looking at the specific language of the pension statute, pension payments are deductible "[f]or any week with respect to which the individual receives, is receiving, or has received payment." Applying the rules of construction to this language, the general phrase, "for any week ... the individual receives, is receiving, or has received payments", is qualified by the phrase "with respect to which." The qualifying language, "with respect to which," broadens the scope of a particular week's deductible pension income to include more than merely the payments actually received. When read in its entirety, one must conclude that the pension statute defines deductible pension income "with respect to" the week for which the pension payment is intended to compensate the individual—not merely the week the payment is actually received by the pensioner. As a result, Koehlinger's lump sum retirement benefit must be viewed "with respect to" the weeks for which it is intended to remunerate him.

 Other rules of statutory construction serve to bolster our interpretation. In determining legislative intent, we examine the entire statute, prior versions, changes made, and the reasons for making them. Also, statutes relating to the same subject matter must be construed together. *State v. Kokomo Tube Co.,* (1981) Ind.App., 426 N.E.2d 1338; *Coghill v. Badger,* (1981) Ind. App., 418 N.E.2d 1201, *trans. denied;* 4A *C.D. Sands, supra,* § 51.02, at 290. There is another part of the Employment Security Act which bears some relation to the pension statute, *i.e.* I.C. 22–4–5–2 (1982) [hereinafter referred to as the dismissal payment statute]. Both statutes define types of income which are deductible from unemployment compensation. The dismissal payment statute provides as follows:

> "Bonuses, gifts, prizes, or payments in lieu of a vacation awarded to an employee by an employing unit shall be considered as *deductible income in and with respect to the week in which the same is actually paid.* The payment of accrued vacation pay, dismissal pay, or severance pay to an individual separated from employment by an employing unit shall be *allocated to the period of time for which such payment is made* immediately following the date of separation and an individual receiving such payments shall not be deemed unemployed with respect to [a] week during which such allocated deductible income equals or exceeds the weekly benefit amount of his claim."

(Emphasis supplied). Koehlinger claims that, because specific allocation language is present in this statute and not the pension statute, the legislature did not intend to have pension payments allocated. A brief glance at the history of the dismissal payment statute disproves that theory.

In *Schenley Distillers v. Review Board of Indiana Employment Security Division,* (1953) 123 Ind.App. 508, 112 N.E.2d 299, this court was called upon to interpret the predecessor to our dismissal payment statute.[3] Not only was the same troublesome statutory language, "[f]or any week with respect to which the individual receives, is receiving, or has received remuneration," present in *Schenley,* but also the same issue of what to do with a lump sum payment was the court's concern—this time as it related to dismissal pay. Judge Achor reasoned that the language "with respect to which" required allocation of a lump sum dismissal payment to the weeks for which it was intended to compensate, rather than simply to the week of actual payment. The legislature *subsequently* changed the language to its present form by adding the

---

**3.** "An individual shall be ineligible for waiting period or benefit rights: *For any week with respect to which the individual receives, is receiving, or has received remuneration* in the form of: dismissal wages ...." IC 1951, 52.-1539d (Burns Code Ed., Repl.1951) (emphasis supplied).

allocation language, an expression of intent consistent with the decision in *Schenley.* Because that case interpreted language identical to that found in the pension statute reaching the same result, we gain strength from that decision.

Furthermore, within the present dismissal payment statute, vacation, dismissal, or severance pay are treated differently than bonuses, gifts, prizes, or payments in lieu of a vacation. The latter are to be deductible income only in the week "actually paid," making specific allocation language necessary for clarity within the dismissal payment provision itself. Therefore, because the legislature chose to retain "with respect to which" language in the pension statute, we may safely presume that it did not intend to limit deductible pension income to that "actually paid" within a given week.

■ Our interpretation is also consistent with the goals sought to be obtained by the legislature in unemployment cases, another essential rule of statutory construction. We recognize that remedial legislation is to be interpreted in favor of the recipient. *Kokomo Tube, supra; Warner Press, Inc. v. Review Board of Indiana Employment Security Division,* (1980) Ind.App., 413 N.E.2d 1003; *Bowen v. Review Board of Indiana Employment Security Division,* (1977) Ind. App., 362 N.E.2d 1178. However,

> "[t]he legislature clearly intended that one who is receiving a pension from a fund contributed to by his employer should not at once be eligible to receive unemployment compensation, if such would be chargeable to the experience account of the same employer who has contributed to the pension fund established for and on behalf of such individual. In other words, it seems apparent that the *legislature intended to avoid a pyramiding of such benefits under such circumstances.*"

*Talley v. Review Board of Indiana Employment Security Division,* (1949) 119 Ind.App. 680, 88 N.E.2d 157, 159 (emphasis supplied). To allow a pensioner to opt for a lump sum pre-payment of benefits otherwise paid monthly in relation to the pensioner's life expectancy, and not require the lump sum recipient to allocate the payment over his life expectancy for "deductible income," clearly violates the pyramiding of benefits prohibition. In fact, the *Talley* court, although faced with the issue of what to do with a monthly rather than a lump sum pension payment, affirmed a Board decision which extrapolated a weekly disqualification figure from a monthly pension payment without even raising the issue of statutory construction.

Koehlinger argues that, because he merely transferred his non-interest-bearing pension into an interest-bearing IRA account and never intended to actually retire, he is not using the pension as a substitute for unemployment compensation. Unfortunately, how Koehlinger *uses* his pension and whether he actually retired are not our concerns—the legislative focus is upon *receipt* of pyramiding benefits.

Other states with legislation identical to Indiana's—Louisiana, Connecticut, and Wisconsin—have reached the same conclusion. Most recently, the Louisiana Supreme Court determined that a recipient receives "remuneration *with respect to* more than merely the single week in which he received the lump sum payment. The lump sum payment represented *remuneration with respect to* the actuarily estimated balance of *Scroggins' life.*" [4] *Tennessee Gas Pipeline Co. v. Administrator, Department of Employment Security,* (La.1978), 364 So.2d 990, 992 (emphasis supplied). *See also Zabrowski v. Administrator, Unemployment Compensation Act,* (1959) 146 Conn. 215, 149 A.2d 310; *McGraw-Edison Co. v. Depart-*

---

**4.** At the time the controversy arose, *La.Rev. Stat.Ann.* § 23:1601(7)(c) (West 1976) provided:

> "An individual shall be disqualified for benefits: (7) *For any week with respect to which he is receiving or has received remuneration in the form of:*

\* \* \* \* \* \*

> (c) Payments under any private *retirement* or pension plan, system or policy toward the cost of which a base period employer is contributing or has contributed on behalf of the individual."

(Emphasis supplied).

*ment of Industry, Labor and Human Relations*, (1976), 72 Wis.2d 99, 240 N.W.2d 148.

Having determined that the pension statute requires an allocation of a lump sum pension payment over the weeks actually covered by the plan, we are faced with a record devoid of any evidence as to either the amount of the lump sum payment or how it was pro-rated. Therefore, we remand this case to the Board to ascertain these missing facts, *and* to compute the weekly income provided by the lump sum payment, which will then be deducted from the weekly unemployment compensation benefit in order to determine if any benefit is payable.

Accordingly, we reverse and remand this case for proceedings consistent with this opinion.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.