William Virgil JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 63S00–8611–CR–986.

Supreme Court of Indiana.

Feb. 8, 1988.

Russell E. Mahoney, Mark Sullivan, Pros. Atty., Petersburg, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of the crimes of Burglary, a Class B felony, for which he received ten (10) years, enhanced by thirty (30) years by reason of his habitual offender status, Theft, a Class D felony, for which he received two (2) years, and Conspiracy, a Class B felony, for which he received ten (10) years, all sentences to run concurrently.

The facts are: The home of Haskell Woolsey was broken into on April 8, 1984, in Pike County, Indiana. Woolsey had a collection of antique guns and swords, Indian artifacts, and old coins. He also had a safe in his home in which valuables were kept. The burglars took many weapons, coins, and pieces of furniture. They attempted to load Woolsey's safe onto a pickup truck; however, when they rolled the safe out onto the porch, it broke through the floor and they were forced to leave it there.

Police Officer John Zirklebach investigated the crime and received a call from George Willis who wanted to show Officer Zirklebach some stolen property. Upon investigation, Zirklebach found two cardboard boxes containing about thirty guns. Willis explained that he had obtained the guns from his employer, Mr. Johnson, the appellant in this case.

Willis testified that he had spoken with appellant about appellant's knowledge of a home with a safe which contained about $70,000 in collectibles. Appellant indicated that he did not want to burglarize the home because he wished to avoid additional prison terms. Appellant stated that the home had a nice setup and he would like to get the money. Appellant told Willis of plans to burglarize the home and showed him a piece of yellow paper containing drawings. Appellant then borrowed his truck.

After the break-in, appellant told Willis that "they" had committed a burglary and needed boxes to hold the gun collection obtained. Appellant told Willis that others had rented a truck to haul items from the burglarized house. He also told Willis that in attempting to remove the safe from the house it fell through the porch and had to be left behind. Willis allowed appellant to store the guns in his sister's garage. Appellant, Gerald Harms, and a man known only as "Slick" moved the guns. Willis saw appellant give Harms and Slick money and heard appellant state that he owed them an additional $100. Appellant indicated to Willis that he had engaged Slick and Harms to commit the burglary for him.

Willis decided to cooperate with authorities because he felt appellant was trying to implicate him in the burglary. Harms testified for the State pursuant to a plea bargain. He testified that he was currently incarcerated at the Federal Correction Institute in Milan, Michigan, as a result of a violation of parole from a counterfeiting conviction. The violation of his parole was his involvement in the instant crime.

Harms testified that he and Slick had met in appellant's barbershop where appellant told them about Woolsey's home. Harms understood that appellant wanted them to commit the burglary. Appellant gave Harms and Slick a yellow paper with a map showing how to get to the place and a plan of the house. It was their initial idea to steal the safe. They had planned to remove its contents and leave it on appellant's property in the strip pits. Slick, Harms and appellant met again and made final plans for the burglary, including the

manner in which they would divide the loot. When the safe crashed through the porch floor, they altered their plan and stole other items from the home. The day after the burglary Harms and Slick again met with appellant and decided how to hide the guns.

Harms was faced with the possibility of an habitual criminal enhancement of any sentence he might receive, plus he had been declared a federal parole violator by reason of his participation in the burglary. He entered into a plea agreement in which the State agreed to forego any habitual criminal charge and further agreed that appellant would receive a four (4) year sentence with all but 494 days suspended. Harms had already served 247 days in jail for which he was to receive good time credit, thus leaving zero days to be served on his sentence with the exception of the federal parole violation.

▇▇▇ Appellant claims he was denied due process of law because the State failed to disclose to the jury all of the specific terms of the plea bargain agreement entered into between the State and Harms. On direct examination, the State brought out the terms of the plea agreement. Harms testified that he was subject to several years imprisonment including an enhancement by reason of being an habitual offender. He stated that he would have been satisfied with a ten (10) year sentence. It was completely revealed to the jury that Harms had the potential of receiving a sentence of over forty (40) years and although he denied he knew he would receive a four (4) year sentence at the time he made his statement concerning his participation in the burglary, it was also brought out that he had entered into the plea agreement for a four (4) year sentence and that one of the conditions was that he was to testify truthfully for the State in the case at bar.

Appellant claims that Harms did not tell the truth about his sentence—that he in fact did not get a four (4) year sentence because a major portion of that sentence was suspended and that after good time was credited he actually received zero time. The fact remains, however, that he did receive a four (4) year sentence. From an examination of this record, it appears the jury was as fully apprised of the facts as was necessary to indicate that Harms had an interest in testifying for the State.

It is correct that the testimony of an accomplice that results from a plea bargain should be highly scrutinized by the trier of fact; however, a defendant may be found guilty solely on the evidence of such an accomplice. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied* (1986), 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900. Promises of leniency do not render an accomplice incompetent to testify. Such fact goes to the weight of his credibility. *Kelley v. State* (1984), Ind., 460 N.E.2d 137. The fact that Harms had received diminution of his sentence or that some of his testimony might have been inconsistent with prior statements goes only to the weight of the evidence and does not make his testimony incredible. *See Haskett v. State* (1979), 271 Ind. 648, 395 N.E.2d 229. The record in this case indicates the jury had a full opportunity to evaluate Harms' testimony and the attending circumstances. We see no lack of due process.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.