STATE of Indiana, Appellant–Defendant,

v.

Richard K. LAND, Jr., Appellee.

STATE of Indiana, Appellant–Defendant,

v.

Mack Vernon TUTT, Appellee.

No. 79A02–9705–CR–282.

Court of Appeals of Indiana.

Dec. 11, 1997.

Jeffrey A. Modisett, Attorney General, Geoff Davis, Deputy Attorney General, Indianapolis, for Appellant–Defendant.

Thomas J. O'Brien, O'Brien & Dekker, Lafayette, for Appellee Richard K. Land, Jr.

Steven P. Meyer, Rosenthal, Greives, O'Bryan & Meyer, Lafayette, for Appellee Mack Vernon Tutt.

## OPINION

SULLIVAN, Judge.

The State of Indiana appeals the trial court's orders dismissing Count I of the respective charging informations against both Richard K. Land, Jr. (Land) and Mack Vernon Tutt (Tutt) (defendants below). The count charged the defendants with Nonsupport of a Dependant Child as a Class C felony.

We reverse.

The sole issue for review is whether the trial court erred in determining that I.C. 35–46–1–5(a), which formed the basis of the charges here, constituted an unconstitutional ex post facto law.

The facts are remarkably simple. Both individuals were charged with Nonsupport of a Dependant Child, as a class C felony, Land in October of 1996 and Tutt in February of 1997. The statute under which they were charged reads as follows:

"(a) A person who knowingly or intentionally fails to provide support to the person's dependant child commits nonsupport of a child, a Class D felony. However, the offense is a Class C felony if the amount of support that is due and owing is at least ten thousand dollars ($10,000)." I.C. 35–46–1–5(a). (Burns Code Ed. Supp.1997)[1].

The amended statute became effective on July 1, 1996, and the charging information for both defendants charged them with committing the crime for a time period beginning on July 1, 1996.[2] The trial court, however, dismissed the charges against the defendants. It determined that the defendants

---

1. The former statute was almost identical save the last sentence which was newly added to the current statute.

2. Land's offense was alleged to have occurred "from July 1, 1996 to December 13, 1996." Record at 21. Tutt's violation was said to have taken place "from July 1, 1996 to October 18, 1996." Tutt Record at 7. For the sake of convenience, all references to the record, unless otherwise noted, will be to *State v. Land.*

had incurred the $10,000 debt prior to the date of the enactment of the statute; therefore, its application to them would violate ex post facto principles.

In its order, the trial court noted:

"If the legislature had intended the penal sanctions involved herein as an 'enhancement,' it would have specifically said so. It did not. It created a new Class C offense involving more than $10,000." Record at 41.

■ An ex post facto law is "any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then proscribed.[sic]' " *Weaver v. Graham* (1981) 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (quotation omitted). Land and Tutt's argument is that amassing a $10,000 child support arrearage could only have been punishable as a Class D felony before the enactment of the current statute. They, in fact, amassed the debt before the passage of the current statute. Therefore, they assert that the punishment being imposed, now a Class C felony, is greater than that prescribed at the time the debt was amassed.

The State, on the other hand, argues that amassing the $10,000 debt is not the act being punished. In the State's briefs and at oral argument, the State contended that the appellees could not be charged with a crime under the new statute unless they, after July 1, again failed to provide support. When Land and Tutt failed to make support payments after July 1, they again failed to provide support as defined by the statute. The statute further says, according to the State's construction, that anyone who fails to provide support, while the amount of support "due and owing" is at least $10,000, is guilty of a Class C felony, without regard as to when the $10,000 became "due and owing." It is claimed that the actual crime was committed after the date of the statute's enactment, and that Land and Tutt could have avoided the Class C felony by keeping current with support after the enactment of the statute.

The State contends that the situation is analogous to that addressed after the enactment of our habitual offender laws. In *Funk v. State* (1981) Ind., 427 N.E.2d 1081, the Indiana Supreme Court considered whether an individual could be adjudged a habitual offender when any of the felonies necessary to establish his habitual offender status occurred before the enactment of the habitual offender statute. The court determined that the defendant was not being punished for the crimes that occurred before the statute was enacted. Rather, he was being punished solely for the third crime and that punishment was enhanced because of the fact that he committed the current crime while having the prior felony convictions. In establishing this distinction, the Court noted "that prior crimes are *involved* in a habitual offender prosecution does not change the fact the penalty is imposed only for the last crime committed.... Appellant ... was punished for a crime committed May 15 or 16, 1979 [after the date of the statute's enactment]." *Id.* at 1087 (emphasis supplied).

The California Court of Appeals also recently addressed a comparable situation in *In Re Evans* (1996) 49 Cal.App.4th 1263, 57 Cal.Rptr.2d 314. There, a California statute made it a public offense for individuals convicted of certain misdemeanors to possess a firearm. After Evans was convicted for spousal abuse, an amendment to the statute was enacted adding the crime of spousal abuse to the list of those misdemeanors which foreclosed the Evans' ability to legally possess a firearm. The court rejected Evans' ex post facto claim and looked to another California case which determined that a statute prohibiting an ex-felon from possessing firearms applied to those who had achieved the status of an ex-felon prior to the statute's enactment stating:

" '[I]t is true that the new statute only applied to defendant because he has the status of a convicted felon, and he achieved that status before that statute became effective[;] nevertheless, the new statute only applies to an event occurring after its effective date, i.e. defendant's possession of

a shotgun.'" *Id.* at 1269, 57 Cal.Rptr.2d 314 (quoting *People v. Mills* (1992) 6 Cal. App.4th 1278, 8 Cal.Rptr.2d 310).

The dispositive question was viewed as whether the defendant's conduct violated a new statute. *Id.*

The State also directs our attention to *United States v. Black* (1997) 7th Cir., 125 F.3d 454. In *Black*, the Seventh Circuit addressed the Federal Child Support Recovery Act (CSRA) which punishes anyone who "willfully fails to pay a past due support obligation with respect to a child who live in another State." 18 USCS § 228(a). A past due support obligation is defined as "any amount—determined ... to be due from a person for the support and maintenance of a child ... that has remained unpaid for a period longer than one year, or is greater than $5,000.". 18 USCS § 228(d)(1).

In that case, one of the defendants argued that one of his children was emancipated before the enactment of the CSRA, and that, therefore, accumulation of all arrearage occurred before such accumulation actually became a criminal act. The Seventh Circuit found no merit in the defendant's position. It noted that "[t]he time-frame in the information post-dated the effective date of the statute" and held that even though the arrearage did in fact accrue before the date that the statute was enacted:

"[e]mancipation did not wipe away the arrearage that he had already accumulated. Thus, there is no question that Davis owed at least $5,000 in unpaid child support. The CSRA punishes a parent for nonpayment of such a debt. That this debt arose before passage of the CSRA is irrelevant. What is irrelevant is that it remained unpaid." *Black, supra,* 125 F.3d at 466–467.[3]

The court accordingly concluded that it is within the power of the legislature to punish the failure to repay child support which accrued before the enactment of the statute.

In support of the trial court's decision here, Tutt and Land view the present statute to differentiate between two separate and distinct crimes rather than as constituting the single crime of non-support, which, if the accumulated support arrearage is at least $10,000, is merely *enhanced* to a Class C felony. Indiana case law does not provide a ready answer to the analytical problem of placing a particular statutory phrasing within one of the two related, but disparate concepts. For example, in *Thomas v. State* (1997) Ind.App., 684 N.E.2d 222, this court held that carrying a handgun without a license by one who has been convicted of a felony within fifteen years prior, a Class C felony, is a "*separate and distinct crime* from the misdemeanor crime of carrying a handgun without a license", rather than a "sentence enhancement". 684 N.E.2d at 223. On the other hand, in *McCants v. State,* (1997) Ind., 686 N.E.2d 1281, our Supreme Court said:

"The crime [of carrying a handgun without a license], however, is *enhanced* to a class C felony if the defendant has a prior felony conviction." (Emphasis supplied).

Attempting to reconcile the cases is not made dramatically easier by the use in *Thomas* of the phrase "sentence enhancement" rather than "felony enhancement". Clearly, in *Thomas,* the elevation of the misdemeanor to a Class C felony was a felony enhancement rather than a mere sentence enhancement.

Be that as it may, contrary to the contention of Land and Tutt and to the trial court's determination, the crime with which Land and Tutt were charged is failure to provide support. The fact that the defendants had at least $10,000 "due and owing" enhanced that crime to a Class C felony. The statute's second sentence begins "[h]owever, *the offense* is a Class C felony if ...." (emphasis supplied). This indicates that *the offense* is what is described in the first sentence and the second sentence is the enhancement.

To be sure, the statute could have been more artfully drawn to avoid' the kind of constitutional attack made on it, but the fact

**3.** We also note that *United States v. Crawford* (1997) 8th Cir., 115 F.3d 1397, while agreeing with the reasoning which was employed by the *Black* court, noted that the argument advanced by the defendant was foreclosed because restitution was not punishment within the meaning of the ex post facto clause. *Id.* at 1403 (citations omitted).

remains that, in its present form, it withstands the ex post facto challenge.[4]

■ We are reminded that, when interpreting a statute, if it "can be construed to support its constitutionality, such construction must be adopted." *Burris v. State* (1994) Ind., 642 N.E.2d 961, 968 *cert. denied* (1995) 516 U.S. 922, 116 S.Ct. 319, 133 L.Ed.2d 221; *Haimbaugh Landscaping, Inc. v. Jegen* (1995) Ind.App., 653 N.E.2d 95, *trans. denied.* In this light, we are led to the conclusion that, as the statute is written, Land and Tutt may be properly charged with the Class C felony if the underlying act, i.e. failure to pay support, is alleged to have occurred after the enactment of the statute. However, unlike the statute at issue in *Black,* the defendants may not simply be charged with failing to pay child support that is due and owing in an amount of at least $10,000. Our statute criminalizes the present act of failing to provide child support and enhances it if the amount due and owing at the time of the underlying act is in excess of $10,000. Our statute does not criminalize the failure to pay past due support.

The State charged the defendants with failure to provide support *after* the date that the statute was enacted. Accordingly, the trial court erred in dismissing the charge as a Class C felony based upon debt incurred before the enactment of the statute.

The decisions of the trial court dismissing Count I against both defendants are reversed and these causes are remanded to the trial court for further proceedings.

KIRSCH and CHEZEM, JJ., concur.

4. The patent unacceptability of Land's and Tutt's position was made tellingly apparent during the oral presentation made to this court. At that time Land punctuated his assertion with a startling exclamation point. He observed, with a degree of emphasis, that even if he never made a single support payment and his original $35 per week support order were to continue unchanged, he could never be convicted of a Class C felony. His view is premised upon the contention that I.C. 35–41–4–2 requires a non-support prosecution to be brought within five years, and during such time frame, under his support order, the arrearage could never accumulate to $10,000. ($35 per week × 52 weeks × 5 years = $9100). Although the arithmetical computation may be accurate, Land's request for us to implement his deductive reasoning into the law and the public policy of this State falls upon deaf ears.

It may be safely stated that our General Assembly neither intended nor contemplated such result. The legislature clearly could not have intended to authorize and approve such criminal and long-term avoidance of the duty of support.