McKinley KELLY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 45S00–9704–CR–00278.

Supreme Court of Indiana.

Nov. 18, 1999.

James F. Stanton, Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Andrew L. Hedges, Deputy Attorney General, Indianapolis, Indiana, Attorney for Appellee.

SULLIVAN, Justice.

A jury found Defendant McKinley Kelly guilty of committing three murders. The trial court entered judgment on two verdicts, set aside the third, and imposed a 110 year sentence. Defendant challenges the sufficiency of the evidence supporting the two convictions and the reasonableness of the sentence. The State also appeals, contending that the court should not have set aside the third verdict. Finding the evidence consistent with the judgment and the sentence appropriate, we affirm.

We have jurisdiction over this direct appeal because Defendant's longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7). We affirm Defendant's convictions and sentences.

### Background

Late in the evening of January 8, 1996, Elisha Woodward,[1] Terrell Brown, Leo Dent, and McKinley Kelly ("Defendant") were riding in Woodward's Chevy Blazer in East Chicago.

The group drove to a liquor store where Woodward purchased beer and gin. While at the store, Defendant and Brown got into an Oldsmobile which was located at the liquor store but owned by Woodward. They drove around, listening to music and not talking for approximately 45 minutes. Woodward and Dent remained in the Blazer and the two vehicles trailed each other, circling the neighborhood for a period of time. The men ended up at a housing project on 151st street where Maurice Hobson, Karl Jackson, and Vincent Ray were standing in a driveway. Defendant and Brown were in the lead car at this time and they stopped and parked in the front end of the driveway. Woodward and Dent pulled in behind them and parked the Blazer at the back end of the driveway.

Defendant got out of the car and confronted Jackson. They argued and Defendant pulled a revolver from his waist and shot Jackson, killing him. Jackson fell to the ground and Defendant continued to shoot as he stood over him. Jackson died from these wounds.

Woodward remained near the Blazer during this exchange while Dent, carrying a shotgun, walked toward where Defendant was shooting Jackson. Meanwhile, Hobson approached Defendant and asked him why he shot Jackson. Brown turned to run away and heard two more shots, one sounding like the revolver again and another sounding like a shotgun. Hobson was shot in the head and chest with the revolver and in the chest with a shotgun. Hobson died from these wounds. Brown did not see Hobson get shot, but heard the blasts and saw Dent and Defendant with the guns.

Brown returned to the car and he and Defendant drove off in the Oldsmobile. Brown heard another shotgun blast when he and Defendant were just about one house down from the scene. Dent had shot Vincent Ray, who was later found

---

1. The record of the proceedings includes many references to Woodward by his nick-   name, "PJ."

dead at the scene from a shotgun wound to the head and neck.

The State charged Defendant with three counts of Murder [2] and a jury found Defendant guilty of all three counts. The trial court judge granted Defendant's motion for judgment on the evidence as to the murder of Vincent Ray (the third shooting—when Defendant and Brown had left the scene), and vacated that one conviction. The trial court sentenced Defendant to 55 years for each of the two remaining Murder convictions, the sentences to be served consecutively.

We will recite additional facts as needed.

## Discussion

### I

■■■ Defendant first claims that the State did not present sufficient credible evidence to sustain the jury's guilty verdicts. When a defendant challenges the sufficiency of the evidence for his conviction, this Court will not reweigh the evidence or assess the credibility of witnesses. *See Thornton v. State,* 712 N.E.2d 960, 961 (Ind.1999); *Guy v. State,* 678 N.E.2d 1130, 1134 (Ind.Ct.App.1997). We examine only evidence favorable to the State and the reasonable inferences to be drawn therefrom. *See id.* We will affirm the verdict if there is "substantial evidence of probative value from which the trier of fact might reasonably have found the defendant guilty beyond a reasonable doubt." *Kingery v. State,* 659 N.E.2d 490, 493 (Ind. 1995) (quoting *Landress v. State,* 600 N.E.2d 938, 940 (Ind.1992)).

■■■ Defendant argues that he was convicted solely on evidence submitted by Brown, a witness who gave contradictory evidence, who was a participant in the confrontations the night of the murders, and who was a friend of the person most likely guilty of the murders, Woodward. Defendant pointed the jury to contradictions regarding Brown's identification of the guns used, argued that Woodward was

older and had some measure of control over Defendant and Dent, presented some evidence supporting scenarios contrary to Brown's testimony, and suggested alternative motives for the facts Brown outlined in his testimony. Nevertheless, Brown's testimony was fundamentally consistent with that of David Velez, a witness who lived near the shootings and who observed the motions of the men who were fighting outside of his window and overheard their exchanges and the gunshots. Brown's testimony was also consistent with the forensic evidence regarding the cause of death of the victims and bullets removed from them.

The jury convicted Defendant on testimony and evidence that was more than circumstantial. Brown was an eyewitness, the State's primary witness, and it was the jury's duty to assess and weigh his credibility. Considering the evidence most favorable to the verdict, as well as all reasonable inferences, we find the trial court and jury could have reasonably concluded that Brown's testimony was accurate and that Defendant killed Hobson and Jackson.

### II

Defendant also contends that his sentences totaling 110 years for two Murders were manifestly unreasonable in light of two mitigating circumstances: (1) Defendant's age at the time of the commission of the offense, and (2) the influence of Woodward, Defendant's older brother, on Defendant's actions.

■■■ ▪ In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigating circumstances. The legislature also permits sentences to be imposed consecutively if aggravating circumstances warrant. *See* Ind.Code § 35–38–1–7.1(b) (1998) (a court may consider aggravating circumstances in

2. Ind.Code § 35–42–1–1 (1993).

determining whether to impose consecutive sentences); *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996) (citing *Reaves v. State,* 586 N.E.2d 847 (Ind. 1992)).

■ When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *See Archer v. State,* 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986)). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances were evaluated and balanced in determining the sentence. *See Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State,* 675 N.E.2d 1084, 1086 (Ind. 1996)).

■ At the time Defendant committed these crimes, Murder carried a presumptive 55 year sentence, with not more than ten years added for aggravating circumstances and not more than ten years subtracted for mitigating circumstances. *See* Ind.Code § 35–50–2–3 (Supp.1995). At the sentencing hearing, the trial court identified six aggravating circumstances: (1) Defendant was on probation with the Juvenile Court at the time of the crimes; (2) Defendant fired the first shot and his shots killed the first victim, setting the subsequent murders in motion; (3) Defendant shot the victims at close range; (4) the murders evince Defendant's lack of respect for human life; (5) there was a risk that Defendant would commit future crimes; and (6) Defendant killed more than one person. In addition, the court noted that the imposition of concurrent sentences would "depreciate the seriousness of the crimes." (R. at 1342.)

The trial court also identified two mitigating circumstances: (1) Defendant was sixteen years old at the time of the offense and seventeen years old at the time of sentencing; and (2) Defendant had no adult or felony convictions.

■ The trial court considered both aggravating and mitigating circumstances in compliance with the statutory sentencing scheme. It is within the sentencing court's discretion to determine whether mitigating circumstances are significant and what weight to accord the identified circumstances. *See Jones v. State,* 705 N.E.2d 452, 454 (Ind.1999). Defendant argues that the record shows he was under the direction and control of his older brother, Woodward, and that Woodward's influence was a strong mitigating circumstance not considered by the court. However, in his sentencing hearing arguments, Defendant's counsel focused on Defendant's age as a mitigating circumstance but did not emphasize the nature of Woodward's control or influence on Defendant. Despite its long list of identified and recognized aggravating circumstances, the trial court imposed the presumptive, rather than an aggravated, sentence for each murder.

The trial court properly outlined its reasoning for Defendant's sentences, and adequately balanced the aggravating and mitigating circumstances with which it was presented, when it imposed consecutive, presumptive 55 year sentences for Defendant's two Murder convictions.

### III

In its cross-appeal, the State argues that the trial court improperly granted judgment on the evidence when it vacated the jury's finding that Defendant was also guilty of murdering Vincent Ray. The State appeals to us to reinstate the jury's guilty verdict for the murder of Vincent Ray.

Ind. Trial Rule 50(A) provides that where a verdict on all or some of the issues in a case is "clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court ... shall enter judgment thereon notwithstanding the verdict."

 The strength of the State's case with respect to the murders of Hobson and Jackson came from Brown's eyewitness testimony and corroborating forensic and autopsy evidence. With respect to the murder of Vincent Ray, both Brown and Defendant had already left the scene. Furthermore, the physical evidence demonstrated that Ray was not shot with nor killed by bullets from the revolver that Defendant used to murder Hobson and Jackson. The Murder charge against Defendant with respect to Ray was, therefore, based on an aiding and abetting theory.

An accomplice is criminally liable for acts done by the accomplice's confederates that were a probable and natural consequence of their common plan, even though the acts may not have been originally conceived or intended in the plan. *See Edgecomb v. State*, 673 N.E.2d 1185, 1193 (Ind.1996) (quoting *Johnson v. State*, 490 N.E.2d 333, 334 (Ind.1986)), *reh'g denied*. The court considers the following factors when determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *See Wright v. State*, 690 N.E.2d 1098, 1106 (Ind.1997). The State had the burden to establish that Defendant and Dent had an original plan to confront the victims or otherwise engage in a criminal act. There was a complete lack of evidence that the confrontations and murders were anything other than spontaneous and "spur of the moment." (R. at 1308–09.) When combined with the fact that Defendant had left the scene prior to the shooting of Vincent Ray, we agree with the trial court that there was insufficient evidence to support the verdict.

### Conclusion

We affirm the judgment of and sentence imposed by the trial court.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur