Charles N. WIGGINS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–9905–CR–169.

Court of Appeals of Indiana.

April 10, 2000.

Transfer Denied June 8, 2000.

Matthew R. Effner, Terre Haute, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. Ind.Code Ann. § 35–46–1–5(a) (West 1998).

## OPINION

FRIEDLANDER, Judge

Charles N. Wiggins appeals his conviction of Nonsupport of a Dependent,[1] a class C felony. Wiggins presents the following restated issues for review:

1. Is IC § 35–46–1–5(a) unconstitutionally vague and ambiguous in that it does not adequately define the terms "dependent child" and "support"?

2. Did Wiggins's conviction violate the constitutional *ex post facto* prohibition?

3. Was the evidence sufficient to sustain Wiggins's conviction?

4. Did the trial court err in admitting evidence of Wiggins's earnings over a period including the previous twenty-four years?

5. Did the trial court commit reversible error in denying Wiggins's motion for mistrial, which was based upon allegedly improper comments made by the prosecutor during closing arguments?

6. Did the trial court err in sentencing Wiggins?

We affirm in part and remand in part.

The facts favorable to the judgment are that on June 7, 1992, Wiggins's marriage to Peggy Wiggins ended by entry of a decree of dissolution. There were two children born to the marriage, who were then eight and seven years of age. Wiggins was ordered to pay child support in the amount of $130.00 per week.

Wiggins was employed as a boilermaker. In the ten years prior to the divorce, Wiggins's average annual income was $25,-920.25. Wiggins earned $27, 250.10 in 1996, and he earned $33,165.62 in 1997. Between 1991 and 1998, Wiggins paid annual child support in the following amounts: 1992—$300; 1993 (after April 7)—$0; 1994—$775; 1995—$0; 1996—

$405; 1997—$1,907.18; 1998 (through January 16)—$0. All of the payments reflected in the above amounts were received either through income withholding or by intercepting and withholding a portion of Wiggins's periodic unemployment payments. As of January 16, 1998, Wiggins's support arrearage totaled $33,832.82.

On February 18, 1998, Wiggins was charged with nonsupport of a minor for nonpayment of support from July 1, 1996 through January 16, 1998. The charge was enhanced to a class C felony because he failed to pay support at a time when the arrearage was at least $10,000. He was convicted as set out above following a jury trial.

### 1.

Wiggins claims that the statute under which he was convicted, IC § 35–46–1–5(a), is unconstitutional in that it is fatally vague and ambiguous. He contends that this statute, which provides that it is a criminal offense if a person "fails to provide support to the person's dependent child ...," is vague and ambiguous in the following ways: (1) It is not clear that "support", as used in the statute, includes monetary support (as opposed to the provision of food, clothing, and shelter); (2) it is not clear that "dependent child", as used in the statute, includes children of a noncustodial (as opposed to custodial) parent.

■ A challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial. Ind.Code Ann. § 35–34–1–6 (West 1998); IC § 35–34–1–4 (West 1998); *Rhinehardt v. State,* 477 N.E.2d 89 (Ind.1985). The failure to timely raise the issue by a motion to dismiss waives the alleged error. *Rhinehardt v. State,* 477 N.E.2d 89.

Prior to trial, Wiggins submitted a motion challenging the constitutionality of IC § 35–46–1–5(a) on grounds that it violated the prohibition against *ex post facto* laws. IC § 35–34–1–4(c) requires that all constitutional grounds must be presented in a timely motion to dismiss. Those that are

not raised in such a motion are waived, regardless of whether the statute's constitutionality was challenged on other grounds. Therefore, Wiggins waived the issue of whether IC § 35–34–1–5(a) is unconstitutionally vague and ambiguous as he alleges. *Rhinehardt v. State,* 477 N.E.2d 89.

### 2.

As indicated previously, Wiggins submitted a pretrial motion to dismiss based upon the contention that a conviction under IC § 35–46–1–5, in his particular case, would violate the constitutional prohibition against *ex post facto* laws. Wiggins claims upon appeal that the trial court erred in denying the motion and that his conviction runs afoul of this constitutional principle.

■ Article I, § 10 of the United States Constitution provides that "[n]o state shall ... pass any ... ex post facto Law." A similar provision in the Indiana Constitution provides that "[n]o ex post facto law ... shall ever be passed." Ind. Const. art. I, § 24. The *ex post facto* analysis is the same under both under Indiana law and the federal Constitution. *Spencer v. O'Connor,* 707 N.E.2d 1039 (Ind.Ct.App.1999), *trans. denied.* The aforementioned Constitutional provisions prohibit states from enacting any law that imposes a punishment for an act that was not punishable at the time it was committed, or that imposes additional punishment to that which was then prescribed. When considering a challenge on *ex post facto* grounds, our inquiry is not whether a legislative change produced a disadvantage for the defendant, but instead whether such change altered the definition of criminal conduct or increased the penalty by which a crime is punishable. *Id.*

■ IC § 35–46–1–5 states:

(a) A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony. However, the offense is a Class C felony if the amount of unpaid support that is

due and owing is at least ten thousand dollars ($10,000).

(b) It is a defense that the child had abandoned the home of his family without the consent of his parent or on the order of a court, but it is not a defense that the child had abandoned the home of his family if the cause of the child's leaving was the fault of his parent.

(c) It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent child.

(d) It is a defense that the accused person was unable to provide support.

Subsection (a), which provides that an arrearage of at least $10,000 is a class C felony, was added as a result of an amendment to the statute that became effective on July 1, 1996. Wiggins claims that, as applied to him, subsection (a) is an *ex post facto* law because (1) he accumulated at least $10,000 prior to the enactment of subsection (a), and (2) the arrearage that accrued after the enactment of subsection (a) did not equal $10,000.

In *State v. Land,* 688 N.E.2d 1307 (Ind. Ct.App.1997), *trans. denied,* this court confronted a constitutional challenge to IC § 35–46–1–5(a) on *ex post facto* grounds. We concluded that the offense set out in the statute is the failure to pay support, which is classified as a class D felony. We further concluded that the 1996 amendment enhances the offense when the amount of support due and owing is at least $10,000. Put another way, the C felony classification for cases involving an arrearage of at least $10,000 represents an enhancement and not the creation of a separate and distinct offense. Based upon this reasoning, we concluded that a person could properly be charged with the class C felony, so long as the underlying act (failure to pay support) is alleged to have occurred after the enactment of the statute. We specifically rejected the proposition underlying Wiggins's first *ex post facto* argument.

Implicit in the *State v. Land* analysis is the principle that a C felony conviction under IC § 35–46–1–5(a) does not run afoul of the constitutional *ex post facto* prohibition so long as the act of failing to pay support that is being prosecuted occurred after the enactment of the 1996 amendment, *regardless of when the $10,000 arrearage accrued.* In this regard, the court noted, "[o]ur statute criminalizes the present act of failing to provide child support and enhances it if the amount due and owing at the time of the underlying act is in excess of $10,000. Our statute does not criminalize the failure to pay past due support." *State v. Land,* 688 N.E.2d at 1311.

Applying the foregoing principles, we hold that conviction of a class C felony under IC § 35–46–1–5(a) does not violate the constitutional *ex post facto* prohibition in cases where (1) at least $10,000 in arrearage accrued before the enactment of the 1996 amendment, or (2) the amount accruing after the amendment is less than $10,000, so long as the total arrearage is at least $10,000.

3.

Wiggins contends that the evidence was insufficient to sustain the conviction. Specifically, he contends that he did provide support for his children and that he proved the defense of inability to pay support.

When considering challenges to the sufficiency of the evidence, we apply a well-settled standard of review. We consider the evidence and reasonable inferences favorable to the conviction. *Kelly v. State,* 719 N.E.2d 391 (Ind.1999). In so doing, we neither reweigh the evidence, nor judge witness credibility. "We will affirm the verdict if there is 'substantial evidence of probative value from which the trier of fact might reasonably have found the defendant guilty beyond a reasonable doubt.'" *Id.* at 394 (quoting *Kingery v. State,* 659 N.E.2d 490, 493 (Ind.1995)).

Wiggins first contends that "support," in the context of IC § 35–46–1–5(a), means food, clothing, and shelter, and does not include monetary support. Therefore, he argues, his failure to make child support payments is not punishable under IC § 35–46–1–5(a). The language employed in the statute belies Wiggins's argument. Because this is a penal statute, the meaning of the term in question is to be strictly construed against the State. *State v. D.M.Z.*, 674 N.E.2d 585 (Ind.Ct. App.1996), *trans. denied.* If an ambiguity exists, it must be resolved against imposing the penalty. *Id.* Only those cases that are clearly within its meaning and intention can be brought within the statute. *State v. McGill*, 622 N.E.2d 239 (Ind.Ct. App.1993). If there is an ambiguity, we turn to rules of statutory construction to aid in our determination of the legislative intent.

Undefined words in a statute are given their plain, ordinary and usual meaning. IND. CODE § 1–1–4–1(c). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Indiana University Found.*, 647 N.E.2d 342, 347 (Ind.Ct. App.1995), *trans. denied.* The meaning of doubtful words may also be determined by reference to their relationship with other associated words and phrases. The canon of construction known as noscitur a sociis provides that the meaning of a doubtful word may be ascertained by reference to the meaning of other words associated with it. *Lincoln Nat'l Bank v. Review Bd. of Indiana Employment Sec. Div.*, 446 N.E.2d 1337, 1338–39 (Ind.Ct.App.1983). This maxim means "it is known from its associates" and in practical application means that a word may be defined by an accompanying word, and ordinarily the coupling of words denotes an intention that they should be understood in the same general sense.

*State v. D.M.Z.*, 674 N.E.2d at 588.

IC § 35–46–1–5(a) states that a person commits the offense of nonsupport of a dependent when he fails to "provide support" to his dependent child. The very next sentence in subsection (a) provides that the offense is enhanced if " the amount of unpaid support" is at least $10,-000. It is clear from context that the term "support" in the second sentence contemplates monetary support in the form of child support payments. Applying the maxim set out above, we conclude that the term "support" has the same meaning in the first sentence as it does the second. Therefore, a person may be prosecuted under IC § 35–46–1–5(a) for failing to provide monetary support in the form of child support payments.

Wiggins claims that the evidence showed that, notwithstanding the arrearage, he did in fact provide support for his children. The evidence favorable to the verdict showed that Wiggins occasionally bought items of clothing for his children, and spent money supporting their hobby of driving quarter-midget racecars. The evidence also showed that he paid $3,387.18 in child support payments between 1992 and 1998. A person may avoid criminal liability under IC § 35–46–1–5 for providing substantial amounts of food, clothing, and shelter, but token amounts would not be sufficient to avoid prosecution. *Geans v. State*, 623 N.E.2d 435 (Ind.Ct.App.1993).

Other than a few items of clothing, there is no evidence of record that Wiggins provided food, clothing, or shelter for his children during the time period in question, let alone substantial amounts of those essentials. During that same period of time, Wiggins paid $3,387.18 in child support payments, barely nine percent of his total obligation of more than $37,000. This token amount was not sufficient to avoid prosecution under IC § 35–46–1–5(a).

Wiggins next claims that he presented sufficient evidence to prove the affirmative defense that he was unable to

pay support. *See* IC § 35–46–1–5(d). The evidence favorable to the verdict reveals that in the years upon which the charges of nonpayment of support were based—1996 and 1997—Wiggins earned $27,250 and $33,165, respectively. His total child support obligation during those years was $6,760, of which he paid only $1,312.18. Wiggins presented no compelling reason to explain why he paid such a small percentage of his total obligation during those years (less than twenty percent). Accordingly, the jury was not compelled to accept Wiggins's claim that he was unable to pay support.

The evidence was sufficient to support the conviction.

4.

Wiggins claims the trial court erred in admitting evidence of Wiggins's earnings over a twenty-four year period.

The trial court has wide discretion to rule on the relevancy of evidence, and rulings in this regard are reviewed for an abuse of that discretion. *Shane v. State,* 716 N.E.2d 391 (Ind.1999). The standard for relevance is a liberal one under Ind. Trial Rule 401. *Jackson v. State,* 712 N.E.2d 986 (Ind.1999). Evidence is relevant if it has any tendency to make the existence of any determinative, consequential fact more probable or less probable than it would be without the evidence. *Shane v. State,* 716 N.E.2d 391. Put more simply, relevant evidence is probative evidence. *Id.*

Wiggins is a boilermaker. He described the work that a boilermaker does as "heavy construction.... We weld, we cut, we build duct work, we build the pollution control devices for Public Service Power Plants type deals." *Record* at 373. He explained that he worked through a union hall. Union member get jobs when a business agent at the union hall learns of available jobs and calls members and sends them to the job site. Wiggins further explained that jobs could last anywhere from one day to six months.

Wiggins's defense consisted in part of the claim that he was unable to work in 1992 and 1993 and that, as a result, he fell behind on his bills and was unable to pay support. In support of this assertion he testified that in 1992 and 1993 he suffered from depression as a result of the divorce, and was unable to work on a regular basis. He stated that the only other employment he has had since he became a boilermaker in 1974 was for a two- or three-month period sometime between 1992 and 1995, when he worked at a salvage yard. He also testified that he had been hospitalized briefly on two occasions because of a low blood count.

The State attempted to show that Wiggins's underemployment in 1992 and 1993 was largely voluntary, and not the result of sickness or lack of job opportunities. The State presented evidence that boilermakers in the area earn as much as $100,000 per year. When apprised of this fact, Wiggins observed that "Up around the Hammond area, they like to work quite a bit." *Record* at 406. The State then asked Wiggins, "Could you work more if you liked to work better?" *Id.* Wiggins responded, "I like to work, it's just that I value my free time. I never have made $50,000 a year, any year." *Id.* In another brief exchange, Wiggins acknowledged that, except for the brief, temporary employment at the salvage yard, he had not applied for any other position since 1991 or 1992. He further acknowledged that he was aware of openings in nearby plants, but had not applied for those positions.

At that point, the State introduced Exhibit 4, which was a statement of Wiggins's annual earnings from 1973 through 1996, prepared by the Social Security Administration. The State claimed that Exhibit 4 was relevant to the question of Wiggins's ability to work and to pay support. After a brief discussion, the trial court admitted the exhibit on that basis. We are not convinced that Exhibit 4 aided the jury in assessing the credibility of

Wiggins's claim, offered in the form of an affirmative defense, that he was unable to pay child support during certain time periods because he did not earn sufficient income. For instance, we cannot discern how knowing Wiggins's income for 1985, much less 1975, would aid the jury in evaluating his claim that he could not work very much in 1992 and 1993 because of depression associated with the divorce. We conclude that the trial court erred in admitting Exhibit 4.

 Erroneously admitted evidence may not require reversal if the error is harmless. *Shane v. State,* 716 N.E.2d 391. "A harmful error is one which causes prejudice to the appellant's substantial rights. When conducting this inquiry, the appellate court must review the record as a whole to determine the probable impact of the evidence on the jury." *Id.* at 398.

 After reviewing the properly admitted evidence supporting the verdict, we are satisfied that the erroneous admission of Exhibit 4 did not contribute to the verdict. As stated previously, Wiggins's defense consisted of the claim that he was financially unable to pay support. However, Wiggins admitted that he chose not to pay support during the time that the arrearage was accumulating, notwithstanding that he was at the same time spending a significant amount of money on nonessential items for his children:

Q You [Wiggins] said that you agreed with what your kids said about what you spent on them, and if I recall, your son said that you spent $8,000 to $9,000 on a midget car and $1400 to $1500 for the motor.

A Wrong car, but it was – we bought the first car was a $2000 car, we spent about $1500 on a motor. We have spent quite a bit of money on spare parts and spare wheels and spare tires.

Q And you made that decision to do that rather than go to the clerk's office and pay support, did you not?

A Yes, sir.

Q And, you thought that was fine even though there was a court order ordering you to pay $130.00 a week?

A Uh huh.

Q You were willing to suffer the consequences of that act, isn't that correct?

A Yes sir, that is correct.

Q And you are today?

A Yes, sir.

*Record* at 395–96. Wiggins further acknowledged that his nonpayment was by choice, and not by necessity:

Q So, you had the money to pay [support], you just elected not to?

A I elected to spend it on my children.

Q Buying race cars and things of that nature?

A Stuff that they wanted, yes, take them different places.

Q Okay, and you heard Mr. Doan said [sic] that going racing was an $80 to $100 a night deal, is that correct?

A Yes sir, that's about right. We've had bad nights that were worse, but that's probably on an average.

Q And, you just felt that in your sense of justice that it was better to spend that money for them to go racing that it was to give it to your former wife in compliance with the court order.

A Yes, sir.

*Record* at 401–02. Still later, Wiggins revealed that he placed the support payments to his ex-wife at the bottom of his list of financial priorities:

Q What did you do with all of your money then?

A I didn't have very much money, but I paid some bills that I had occurred [sic] during the divorce. I owed mom some money, I owed my uncle some money, I owed everybody I knew some money.

Q And you owed your ex-wife some money too, didn't you?

A Yes, sir.

Q Did you pay any of that?

A No.

Q So, you elected to pay on a pecking order, she was well down the list.

A Yes, sir.

Q And, actually beyond the list because you never ever paid anything to her voluntarily, did you?

A Not since 1992, before that time I did.

*Id.* at 404–05. We appreciate Wiggins's candor in admitting that he voluntarily chose not to pay support at a time when he was willing to spend thousands of dollars on racing cars and equipment. However, even in Indiana, the law does not countenance funding a dependent child's hobby of racing cars as a viable substitute for providing food, clothing, and shelter to that child. In view of the other, properly admitted evidence supporting the verdict, we conclude that the erroneous admission of Exhibit 4 did not impact the jury's verdict and thus did not prejudice Wiggins's substantial rights. Therefore, Wiggins is not entitled to reversal on this basis.

5.

Wiggins contends that the trial court committed reversible error in denying his motion for mistrial based upon allegedly improper comments made by the prosecutor during closing argument.

■ Before we will consider a claim of prosecutorial misconduct, the defendant must have made timely objection to alleged misconduct at trial to secure an issue for review, and failure to so object waives the issue. *Stevens v. State,* 691 N.E.2d 412 (Ind.1997), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). This rule applies to allegedly improper remarks made during closing argument. *Charlton v. State,* 702 N.E.2d 1045 (Ind. 1998).

Wiggins did not object to any of the allegedly improper remarks made by the prosecutor during closing argument. Instead, an oral motion for mistrial upon that basis was made after the prosecution and defense had rested, but before the jury returned its verdict. In failing to interpose an immediate objection, request an admonishment and then move for mistrial, *see Williams v. State,* 681 N.E.2d 195 (Ind. 1997), Wiggins waived appellate review of the issue. *Stevens v. State,* 691 N.E.2d 412. Wiggins seeks to escape waiver by invoking the fundamental error doctrine.

■ A party may escape waiver of an issue, based upon a failure to object, if the claimed error is fundamental in nature. *Charlton v. State,* 702 N.E.2d 1045. "Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair to the defendant and, thereby, depriving the defendant of fundamental due process." *Id.* at 1051. In order to constitute fundamental error, the error must prejudice the rights of a defendant to such an extent that it makes a fair trial impossible. With specific reference to cases alleging prosecutorial misconduct, the conduct in question must have "subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision." *Id.* at 1051 (quoting *Isaacs v. State,* 673 N.E.2d 757, 763 (Ind. 1996)). The gravity of peril depends upon the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Charlton v. State,* 702 N.E.2d 1045.

Wiggins describes the comments in question as follows:

In the present case, the State, in its closing argument, indicated that Defendant's defense was a "Disney World defense", and compared Defendant with a parent which took his children to Disney World and stayed until he spent the amount of his child support obligation for the year, said amount constituting the end of said parent's obligation for that year. Such a scenario mischarac-

terized the evidence. . . . The State also argued "[I]f this is not criminal nonsupport, then there is not a fact situation that I am aware of that would ever create or constitute criminal nonsupport". And, "[t]his is a time to stand on the principle of the laws of the State of Indiana and make a statement that if you father a child, you have to support that child. That is why we are here." Moreover, the prosecutor repeated and emphasized his prior statements by concluding, "Now, if you folks do not believe that this is criminal nonsupport, we will never having a stronger factual situation than we have in this case. The evidence is overwhelming, it screams out for a guilty verdict. Anything less than guilty of a Class C Felony in my opinion you have not fulfilled your obligations to well and truly try this case. And, I would ask on behalf of – not just Peggy Wilson, but every custodial mother and father out there who is receiving support, that you do what is right in this particular case and send a message to this community that if you father a child, you are going to have to support that child." Appellant's Brief at 22–23.

 Even assuming for the sake of argument that the comments to which Wiggins alludes were improper, we conclude that the probable persuasive effect of the comments upon the jury was not such as to place Wiggins in a position of grave peril from which he could not recover. Our conclusion in this regard is based upon the strength of the evidence of guilt. It is undisputed that Wiggins amassed an arrearage in excess of $32,000. By his own admission, Wiggins deliberately chose to pay[2] only a small percentage of the total amount of support that he was admittedly aware that he owed to his ex-wife in 1996 and 1997, years during which his

earnings totaled $27,250.10 and $33,165.62, respectively.

In view of the strength of the evidence against him, the prosecutor's comments, even if erroneous, did not constitute fundamental error. Accordingly, in failing to offer a timely objection to the comments in question, Wiggins waived any error in that regard.

6.

Wiggins contends that the trial court erred in sentencing him in that (1) it failed to sufficiently explain its reasons for imposing the sentence it chose; (2) it failed to identify proper mitigating factors supported by the record; and (3) the sentence was manifestly unreasonable. We are unable to consider whether the sentence is manifestly unreasonable because the sentencing statement is inadequate.

 Sentencing decisions are committed to the trial court's discretion and will be reversed only upon a showing of abuse of discretion. *Jones v. State*, 698 N.E.2d 289 (Ind.1998). Among the decisions left to the trial court's discretion is whether to increase or decrease a presumptive sentence based upon aggravating and mitigating circumstances. *Id.* "[A] sentencing judge must articulate her reasoning only when she deviates from the statutory presumptive sentence." *Jones v. State*, 698 N.E.2d at 290. However, when a trial court adjusts a presumptive sentence by suspending a portion of that sentence, the record should disclose what factors were considered to be mitigating or aggravating circumstances. *Morgan v. State*, 675 N.E.2d 1067 (Ind.1996).

 In the instant case, the trial court imposed the presumptive four-year sentence, and then suspended two years. In its sentencing statement, the court made

---

**2.** Actually, as indicated earlier, Wiggins did not choose to pay any support. All of the support paid to Wiggins's ex-wife since the divorce has resulted from income withholding orders and interceptions of benefits checks. On the subject of Wiggins's reluctance to pay support, the State presented evidence that Wiggins admitted at trial that he has not filed tax returns since 1988 or 1989, in part because he knows that any refund would be intercepted and sent to his ex-wife.

no mention of aggravating and mitigating circumstances or the balancing process that resulted in the imposition of less than the presumptive sentence. When imposing other than the presumptive sentence, the law requires that the trial court (1) identify all significant aggravating and mitigating circumstances; (2) specifically explain why it found each circumstance; and (3) balance those factors to arrive at a sentencing decision. *Carter v. State*, 711 N.E.2d 835 (Ind.1999). The trial court failed to do so in the instant case.

 The record does not provide us with a basis from which we may review the trial court's identification and balancing of aggravating and mitigating circumstances, and the sentence imposed thereon. Therefore, we must remand to the trial court for a more adequate explanation of its sentencing decision. *Morgan v. State*, 675 N.E.2d 1067.

Judgment affirmed in part and remanded in part.

DARDEN, J., concurs.

GARRARD, Sr.J., dissenting.

GARRARD, Senior Judge, dissenting

I concur with the majority except for its determination that whenever a trial court adjusts a presumptive sentence by suspending a portion thereof, the record should disclose what factors were considered to be mitigating or aggravating circumstances. I respectfully dissent to that determination for two reasons.

Our cases have traditionally held that the trial court need not state reasons when it simply imposes the presumptive sentence prescribed by the legislature. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind. 1996); *Winfrey v. State*, 547 N.E.2d 272 (Ind.1989). Moreover, our decisions have determined that the sentence imposed equals the maximum number of years imposed, even though some portion of that time is ordered suspended. *See, e.g. Johnson v. State*, 518 N.E.2d 1087 (1988);

*Thakkar v. State*, 644 N.E.2d 609 (Ind.Ct. App.1994). Since the trial court imposed the four year presumptive sentence on Wiggins, it was not required to state aggravating or mitigating factors.

The decision in *Morgan, supra*, should not alter this result. Although the court in *Morgan* stated that "[w]hen a trial court decides to adjust a defendant's sentence by suspending a portion of the sentence, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances", it did so *in the context* of determining whether the trial court had adequately supported its decision to impose *consecutive sentences*. Since the imposition of nonmandatory consecutive sentences has traditionally required the court to balance aggravators and mitigators, *Reaves v. State*, 586 N.E.2d 847 (Ind.1992), *Morgan* should not be read as broadly as required by the majority.

Secondly, the cases are legion holding that there is no right to a suspended sentence and the decision to suspend all or a portion of a sentence (except where the legislature has precluded suspension) is a matter of discretion with the trial court. Suspending a portion of a sentence is one of the tools available to the court in attempting to craft a sentence that will lead a convicted person to accept a more socially acceptable way of life. While it may be intuitively correct to assert that the court must have found something in mitigation to cause it to suspend a portion of a sentence, it seems to me that much of the time the court's focus is simply upon what is likely to cause the person before it to begin leading a law-abiding life. I see no particular benefit in requiring the court to expressly identify some kind of mitigating factors to justify its result, although requiring it to do so may proliferate appellate claims concerning the result.

Therefore, I would not require trial courts to articulate the reasons for sus-

pending all or a part of a defendant's sentence.