## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 20 2015, 7:42 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Terry A. White<br>Olsen & White, LLP<br>Evansville, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Kyle Hunter<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Arnel J. Gallanosa, D.D.S.,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Indiana State Board of Dentistry,<br>*Appellee-Respondent,* | March 20, 2015<br><br>Court of Appeals Case No.<br>87A01-1407-PL-282<br><br>Appeal from the Warrick Superior Court<br>The Honorable Keith A. Meier, Judge<br>Cause No. 87D01-1401-PL-42 |

**Bradford, Judge.**

# Case Summary

[1] On December 31, 2013, Appellee-Respondent the Indiana State Board of Dentistry ("the Board") revoked Appellant-Petitioner Arnel J. Gallanosa's

license to practice dentistry in the State of Indiana. Gallanosa had left and/or closed his practice, Access Dental Care ("ADC"), and failed to provide notice to his patients as he was required to do by administrative regulation. At the time of this statutory violation, Gallanosa's license was on probation for committing several acts of Medicaid fraud in 2012. Gallanosa filed a petition for judicial review which was denied by the trial court. In this appeal, Gallanosa alleges that the Board misconstrued the notice regulation, that the Board's decision was arbitrary and capricious and unsupported by substantial evidence, and that the notice regulation is unconstitutionally vague. We affirm the Board's judgment.

## Facts and Procedural History

[2] The relevant facts, as originally found by the Board and incorporated as findings of the trial court, are as follows:

1. [Gallanosa]'s address on record with the Indiana Professional Licensing Agency ("ILPA") is 137 Hiatt Drive, Carmel, Indiana 46074.
2. [Gallanosa] is a licensed dentist in the State of Indiana having been issued license number 12009962A on July 3, 1997.
3. On or around June 21, 2012, [Gallanosa]'s license was placed on probation, and is currently on probation.
4. Prior to May 20, 2013, [Gallanosa] owned Access Dental Care, located at 3750 North Meridian Street, Suite 200, Indianapolis, Indiana 46028.
5. In April 2013, Elizabeth Simpson, D.M.D. began her employment at Access Dental Care as an associate.

6. On or around May 20, 2013, [Gallanosa] transferred ownership of Access Dental Care to Dr. Simpson for only $100.00, although no cash was exchanged. [Gallanosa] initiated and performed this transfer since Access Dental Care primarily serves Medicaid patients, and [Gallanosa] was prohibited from serving Medicaid patients. Dr. Simpson had made no attempt to obtain ownership of Access Dental Care prior to this. [Gallanosa] then discontinued providing services at this location, and in Indianapolis.

7. On or around June 19, 2013, [Gallanosa] signed a termination of the lease, and the office was vacated by June 20, 2013.

8. On or around June 26, 2013, Patient A attempted to call Access Dental Care to discuss a bill, but the number was disconnected. Patient A then went to Access Dental Care and found that it was permanently closed.

9. On or around July 5, 2013, Patient B went to Access Dental Care to obtain her records and found that it was permanently closed.

10. 828 IAC 1-1-24(a) states, "Upon retirement, discontinuation of practice, or leaving or moving from a community, a dentist shall: (1) notify all of the dentist's active patients in writing, or by publication once a week for three (3) consecutive weeks in a newspaper of general circulation in the community, that the dentist intends to discontinue the dentist's practice of dentistry in the community; and (2) encourage the dentist's patients to seek the services of another dentist."

11. [Gallanosa] failed to comply with the provisions of 828 IAC 1-1-24(a) either upon discontinuation of his practice and leaving Indianapolis in May 2013, or upon his termination of the lease for Access Dental Care in June 2013.

12. Dr. Simpson has taken custody of Access Dental Care's records and has placed a publication in the Indianapolis Star for three weeks as required by 828 IAC 1-1-24(a).

13. [Gallanosa] has had several prior disciplinary actions. In February 2012, [Gallanosa]'s license was summarily suspended after [Gallanosa] was charged with ten counts of Medicaid Fraud, five counts of Theft, and three counts of Conspiracy to Commit Medicaid Fraud.

14. In April 2012, the Board suspended [Gallanosa]'s license after [Gallanosa provided] treatment to five mental health patients without obtaining the proper consent. [Gallanosa]'s license was reinstated on probation in June 2012.

15. In February 2013, an Order to Show Cause hearing was held and [Gallanosa]'s probation was modified and [Gallanosa] was assessed a $1000 fine.

Appellant's App. p. 8.

[3] On October 9, 2013, the Consumer Protection Division of the Indiana Attorney General's Office ("CPD") filed a complaint with the Board against Gallanosa. The Board held a hearing on December 6, 2013 and, on December 31, 2013, revoked Gallanosa's license and imposed a $1000.00 fine and a $5.00 fee against him. On January 8, 2014, Gallanosa filed a petition for judicial review. On April 30, 2014, the trial court held a hearing to review the Board's decision. On June 2, 2014, the trial court affirmed the Board's decision. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

[4] Judicial review of an administrative decision is limited under the Administrative Orders and Procedures Act ("AOPA"). Agency action subject to AOPA will be reversed only if the court "determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." *See* Ind. Code § 4–21.5–5–14(d). A trial court and an

appellate court both review the decision of an administrative agency with the same standard of review. In reviewing the decision of an administrative agency, we defer to the agency's expertise and will not reverse simply because we may have reached a different result. The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity. Review of an agency's decision is largely confined to the agency record, and the court may not substitute its judgment for that of the agency. We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law de novo. On review, we do not reweigh the evidence.

*Terkosky v. In. Dep't of Educ.*, 996 N.E.2d 832, 841-42 (Ind. Ct. App. 2013) (some citations and quotation marks omitted). "An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000) (citing *Ind. Dep't of State Revenue v. Bulkmatic Transport, Co.*, 648 N.E.2d 1156, 1158 (Ind. 1995)).

## II. Substantial Evidence Analysis

Indiana courts have defined substantial evidence as something "more than a scintilla, but something less than a preponderance of the evidence." *State v. Carmel Healthcare Mgmt. Inc.*, 660 N.E.2d 1379, 1384 (Ind. Ct. App. 1996), *trans. denied*; see also *Ind. Family and Soc. Servs. Admin. v. Pickett*, 903 N.E.2d 171, 177 (Ind. Ct. App. 2009) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted), *aff'd and clarified on reh'g*. Only if the agency action is unsupported by substantial evidence or is contrary to law may it be reversed.

*Terkosky*, 996 N.E.2d at 842.

# A. Whether Gallanosa's Actions Triggered the Notice Requirements of 828 IAC 1-1-24(a)

Gallanosa claims that his decision to leave ADC did not trigger the requirements of 828 IAC 1-1-24(a). Specifically, he argues that the "Board misconstrued 828 IAC 1-1-24(a) by determining that Gallanosa was required to send notice to patients, who were generally unassigned to a particular dentist, when he left [ADC] intact with others to service the existing patients."[1] 828 IAC 1-1-24(a) provides as follows:

> Upon retirement, discontinuation of practice, or leaving or moving from a community, a dentist shall: (1) notify all of the dentist's active patients in writing, or by publication once a week for three (3) consecutive weeks in a newspaper of general circulation in the community, that the dentist intends to discontinue the dentist's practice of dentistry in the community; and (2) encourage the dentist's patients to seek the services of another dentist.

Gallanosa's first argument–that the patients were not assigned to a particular dentist and so would not be entitled to notice under the 828 IAC 1-1-24(a)–fails for several reasons. At the Board hearing, Patient A testified that she was a patient at ADC for approximately three years and that Gallanosa was the only doctor practicing at ADC until he "ran into the legal problems" in 2012. Petitioner's Ex. A p. 27. Gallanosa hired Dr. Simpson on April 17, 2013, and

---

[1] Gallanosa also contends that 828 IAC 1-1-24(a) is highly penal in nature due to the gravity of the punishment (license revocation), and so the regulation should be strictly construed under the rule of lenity. Under the rule of lenity, any ambiguity in a criminal or penal statute must be resolved against the imposition of the penalty. *Dye v. State*, 984 N.E.2d 625, 630 (Ind. 2013). It is unnecessary for us to address this argument because the regulation is unambiguous as applied to this case and a more strict interpretation would not affect our decision.

Diana Taverbaugh sometime in 2012. Patient A said that her "preference was to be seen by Dr. Gallanosa and [she] didn't want to be seen by any of the other doctors that were working in his office...." Petitioner's Ex. A p. 19. Patient A went on to testify, "I came [to ADC] specifically to see Gallanosa, which is why I didn't ever go to any other doctors." Petitioner's Ex. A p. 24. Additionally, Patient B testified that she "became a patient of Dr. Gallanosa's" on April 2, 2013. Petitioner's Ex. A p. 7. There is substantial evidence that that the two patient witnesses were both "active patients" of Gallanosa's at the time he left ADC. Accordingly, they were entitled to notice under 828 IAC 1-1-24(a).

[9] Gallanosa's second argument–that he left ADC intact with others available to service patients–is also contradicted by the evidence in the record. Gallanosa did not, in fact, leave the practice intact. Gallanosa transferred a portion of the practice to Dr. Simpson via an agreement on May 20, 2013.[2] However, Gallanosa subsequently terminated the lease for the property where ADC was located on June 19, 2013. Dr. Simpson attempted to negotiate with the landlord to renew the lease under her name, but the landlord refused to deal with anyone other than Gallanosa. Both Patient A and Patient B testified that they attempted to call the office with questions but the office line was

---

[2] It is not entirely clear what portion, if any, was actually transferred to Dr. Simpson under the agreement. At the Board hearing, Dr. Simpson was asked, "[I]n June 2013 [after the agreement was executed], who did you consider the owner of [ADC], you or Dr. Gallanosa?" To which Dr. Simpson responded, "Sort of both," and went on to say it "wasn't very clear" and that her attorney told her she was just the registered agent, not the owner. Petitioner's Ex. A p. 42.

disconnected. Subsequently, both patients went to the office only to find that it was closed and appeared to be empty. Patient A testified that, despite her close relationship with Gallanosa's former office manager, April Hall, she was still unable to recover her dental records after the ADC closed.

[10] There is substantial evidence that Gallanosa had active patients when he left ADC and that he did leave or discontinue the practice by transferring ownership, terminating the lease, and/or discounting his work at ADC. The Board did not misconstrue 828 IAC 1-1-24(a) by determining that Gallanosa's actions triggered his duty to notify his patients thereunder.

## B. Whether Gallanosa Fulfilled the Notice Requirements of 828 IAC 1-1-24(a)

[11] Gallanosa claims there was not substantial evidence (1) that his patients did not receive public or private notice, and (2) in the alternative, that he knowingly failed to provide notice. Both Patient A and Patient B testified that they did not receive written notice of any kind. Patient A also testified that she was aware of other patients of Gallanosa's who did not receive any notice. Simpson testified that she provided public notice in the Indianapolis Star newspaper in July of 2013, approximately one month after the practice closed, in order to comply with 828 IAC 1-1-24(a). Gallanosa argues that Simpson assumed his duty to provide notice when she assumed ownership of ADC, and that her public notice satisfied his notice requirement as well. This argument is without merit. The obligation to provide notice is imposed on practitioners individually, and not on a dental practice generally. *See* 828 IAC 1-1-24(a); Ind. Code § 25-1-9-

4(a)(3); and Ind. Code § 25-1-9-2. Furthermore, a professional cannot contract away or otherwise transfer his or her personal professional ethical duties.

[12] Gallanosa also argues that he did not "knowingly"[3] fail to serve notice because he claims that Hall told him that she had sent postcards to his patients informing them of his departure from ADC. However, both Patient A and Dr. Simpson testified that Hall informed them that she did not send any such notice. Patient A also testified that Gallanosa asked Hall to falsely testify in front of the Board. Additionally, Hall contacted the investigating Deputy Attorney General to inform him that she had not written or signed a letter which Gallanosa had purportedly written in her name and requested that she sign and affirm as true.

[13] After gauging the credibility of the witnesses' testimony and weighing the evidence, the Board was not inclined to believe Gallanosa's self-serving testimony and determined that Gallanosa had knowingly failed to provide notice to his patients. The Board had substantial evidence to reach this conclusion. Gallanosa's arguments to the contrary are no more than a request for this court to reweigh the evidence, which we will not do. *Terkosky*, 996 N.E.2d at 842.

---

[3] Under Indiana Code section 25-1-9-4(a)(3), a practitioner is only subject to discipline for "knowingly" violating a professional regulation such as 828 IAC 1-1-24(a).

# III. Constitutionality of 828 IAC 1-1-24(a)

[14]    Gallanosa argues that 828 IAC 1-1-24(a) is unconstitutionally vague for failing to specify a time period in which notice must be provided to patients following the dentist's retirement or discontinuation of practice.

> When reviewing a challenge to the constitutionality of a statute, we observe a high level of deference to the legislature's decision-making. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994). The statute or regulation is presumed to be constitutional "until clearly overcome by a contrary showing." *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind. 1996); see also *Collins*, 644 N.E.2d at 80. The challenging party bears the considerable burden of proving this contrary showing, and any doubts are resolved against that challenge. *Ledbetter v. Hunter*, 842 N.E.2d 810, 815 (Ind. 2006); *Boehm*, 675 N.E.2d at 321.

*Fry v. State*, 990 N.E.2d 429, 434 (Ind. 2013). "If a statute can be construed to support its constitutionality, such construction must be adopted." *Boss v. State*, 702 N.E.2d 782, 784 (Ind. Ct. App. 1998) (citing *State v. Land*, 688 N.E.2d 1307, 1311 (Ind. Ct. App. 1997), *trans. denied*.).

> A statute will not be held to be unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct. A statute may also be impermissibly vague if its terms invite arbitrary or discriminatory enforcement….However, a statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case.

*Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008) (citations omitted).

[15]  Gallanosa alleges that the word "upon," as used in 828 IAC 1-1-24(a), "can be interpreted in many ways by reasonable people….In fact, 'upon' can be construed to include a span of expressions from 'soon' to 'shortly' to 'just' to 'only a short time away' to 'separated by only a short time' to 'during the period of time that is not very far into the future,' or it could also mean 'immediately'." Appellant's Br. p. 22 (citation omitted). Gallanosa's own definitions rebut his argument that "upon" is ambiguous. The definitions provided reveal that "upon" is commonly understood to encompass only a narrow scope. Gallanosa goes on to admit that, "the regulation would appear to mean to a reasonable person that a patient notification should be placed within a reasonably short period of time." Appellant's Br. p. 22. We agree. A reasonable dentist would know to provide notification as soon as is reasonably possible once the notice requirement is triggered. As an example, Dr. Simpson provided public notice within a month of the termination of the lease and continued taking ADC patients at another office until the three week public notice period had concluded.

[16]  Gallanosa's argument fails regardless of the exact meaning of "upon" because, as we determined above, he did not provide any form of notice to his patients. "[A] statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case." *Baumgartner*, 891 N.E.2d at 1136. Gallanosa cannot claim that his failure to comply with the rule was due to its alleged temporal vagueness when he made no attempt to comply with the rule in any respect or within any period of time.

# IV. Arbitrary and Capricious Analysis

[17] The challenging party has the burden of proving that an administrative action was arbitrary and capricious. An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.

*Fornelli v. City of Knox*, 902 N.E.2d 889, 892 (Ind. Ct. App. 2009) (quoting *City of Indpls. v. Woods*, 703 N.E.2d 1087, 1091 (Ind. Ct. App. 1998), *trans. denied*).

[18] As we have explained above, there was substantial evidence in the record supporting the Board's decision to find that Gallanosa breached his duty to provide notice to his patients. Furthermore, it was not unreasonable for the Board to revoke Gallanosa's license as a consequence of his actions based on Gallanosa's disciplinary history. On January 3, 2012, Gallanosa was charged with ten counts of Class D felony Medicaid fraud, five counts of Class D felony theft, and three counts of Class D felony conspiracy to commit Medicaid fraud. These charges were filed as a result of allegations that Gallanosa had made cash payments to several mentally unstable persons in exchange for them becoming new patients, which is a violation of Indiana Medicaid laws. Gallanosa also made several fraudulent claims to patients' Medicaid accounts for procedures that were not actually conducted. On April 13, 2012, Gallanosa's license to practice was suspended for three months and he was placed on probation for five years.

[19] It is particularly troubling that Gallanosa's actions which predicated the instant claim took place less than a year after his license was reinstated and while he

was still on probation.  With the seriousness and recentness of Gallanosa's previous discipline in mind, we cannot say that the Board's decision to revoke Gallanosa's license was patently unreasonable or made without consideration of the circumstances.

[20] We affirm the judgment of the Board.

Najam, J., and Mathias, J., concur.