[No. E018197. Fourth Dist., Div. Two. Oct. 3, 1996.]

In re DICK G. EVANS on Habeas Corpus.

## COUNSEL

Ralph S. Greer for Petitioner.

Grover Trask, District Attorney, and Kelton A. Tobler, Deputy District Attorney, for Respondent.

## OPINION

**McKINSTER, J.**—This petition raises the issue[1] of whether Penal Code section 12021, subdivision (c) unconstitutionally discriminates among various classes of persons who are subject to a 10-year prohibition on possessing firearms as a consequence of misdemeanor convictions.[2] We conclude that it does. In order to preserve as much of the legislative intent as possible, we will construe the statute to include petitioner within its reach, and remand with directions that petitioner be allowed to seek relief under that subdivision.

### POSTURE OF THE CASE

In 1992, petitioner Dick G. Evans entered a plea of guilty to spousal abuse. (§ 273.5.) The offense was classified as a misdemeanor, and Evans was placed on summary probation.

At the time, section 12021, subdivision (c)(1) provided that any person convicted of specified misdemeanors who, within 10 years of the conviction, had any firearm in his or her possession or under his or her control, was guilty of a public offense.[3] Spousal abuse was *not* one of the listed misdemeanors, but was added by amendment in 1993.[4]

Section 12021 had first been amended to include misdemeanors as offenses subjecting the convicted person to a firearms prohibition in 1990, when subdivision (c) was originally added. Apparently the Legislature was soon concerned that the new law might operate with undue harshness on certain misdemeanants, because in 1991 it added subdivision (c)(2) to the

---

[1]Petitioner actually raises several other issues, some of which we will discuss in passing; however, the issue noted here is dispositive.

[2]All subsequent statutory references are to the Penal Code unless otherwise specified.

[3]The offense is a "wobbler," punishable either by state prison or county jail time.

[4]Government Code section 9600, subdivision (a), provides that statutes enacted at regular sessions take effect on January 1 of the year following. Thus, this 1993 amendment became effective on January 1, 1994. The amendments made in 1991 to which we will refer became effective January 1, 1992.

statute. As then enacted, this subdivision allowed "[a]ny person, whose continued employment or livelihood is dependent on the ability to legally possess a firearm, who is subject to the prohibition imposed by this subdivision because of a conviction prior to the effective date of the amendments which added this paragraph to this section[, i.e., January 1, 1991][5] may petition the court for relief from this prohibition." The effect was that persons who had suffered qualifying misdemeanor convictions *before* section 12021 was amended to impose the firearm prohibition, and who needed firearms in their work, could seek modification or elimination of the prohibition. Persons whose qualifying convictions occurred after the effective date of the 1990 amendment, on the other hand, had no such opportunity. This was not unreasonable, however, as those persons were legally on notice of the weapons prohibition when they were convicted.[6]

As noted above, in 1993 the Legislature further amended section 12021 to add spousal abuse as a qualifying misdemeanor. However, it also made *additional changes which affected the right to seek relief.* It amended subdivision (c)(2) so that the provision now applies only to peace officers who need a firearm as a condition of their employment, not to any person who does. Furthermore, it limited the right to misdemeanant peace officers who had been convicted of one of only three offenses—spousal battery, violation of a domestic violence protective order, and stalking. (§§ 273.5, 273.6, and 646.9.)

The 1993 amendments also added subdivision (c)(3) to section 12021, which applies to *any* person subject to the general prohibition because of a qualifying conviction suffered before January 1, 1991. Thus, subdivision (c)(2) now applies only to peace officers and only to those whose qualifying misdemeanor convictions were for one of three specified offenses; however, those convictions need not have been suffered before these offenses were added as "triggering" offenses. On the other hand, subdivision (c)(3) now applies broadly to *any* misdemeanant subject to the weapons prohibition, but only if the qualifying conviction occurred before January 1, 1991.

The result of all this was that as of January 1, 1994, petitioner Evans found himself forbidden to possess a firearm. Finding this burdensome, he filed a petition in the municipal court seeking relief under the statute, which

---

[5]The reference to "this paragraph" must be to subdivision (c) as initially enacted in 1990. If it were intended to refer to the *1991* amendment, it would have been far easier and clearer simply to have said "prior to the effective date of *this* amendment." Furthermore, making the new provision applicable only to those who suffered qualifying misdemeanor convictions before the misdemeanors were added to section 12021 serves the obvious purpose of amelioration.

[6]Although not necessarily when the offense occurred.

requires that such a petition be filed in the court which rendered the conviction. However, it appears that upon reading section 12021, subdivision (c) more closely, Evans became concerned that the relief provisions might be held not to apply to him. Accordingly, he filed a supplement in which he challenged the imposition of the firearms prohibition to him on numerous, largely constitutional, grounds. The case, however, still bore a municipal court title and caption.

The trial court granted Evans relief on the asserted ground of ex post facto violation. The People eventually appealed to the appellate department of the superior court, which reversed without opinion. Evans's efforts to have the case certified to this court were unsuccessful, and he eventually filed this petition.[7]

## DISCUSSION

■ The trial court held that application of the firearm prohibition to Evans constituted an ex post facto violation. This was incorrect.

The United States Constitution, article I, sections 9 and 10 and the California Constitution, article I, section 9 prohibit the passage of ex post facto laws. As arguably applicable to Evans, a statute violates the ex post facto rule if it increases the punishment for a crime after its commission. (*Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390-392 [1 L.Ed. 648, 650-651].)

The instant case is not reasonably distinguishable from that treated in this court's decision in *People* v. *Mills* (1992) 6 Cal.App.4th 1278 [8 Cal.Rptr.2d 310]. There, subdivision (a) of section 12021 provided, at the time of

---

[7]Because the People have agreed that we should decide the issue raised by the petition, we may gloss over the procedural peculiarities of this case, merely noting them for the record. The first occurred when the trial court elected to hear Evans's petition as a *superior* court, presumably under the trial judge's cross-appointment. The trial judge may well have recognized that, sitting as a municipal court, there was no jurisdiction to hear a nonstatutory petition for writ of mandate. (Code Civ. Proc., § 86.)

The People first filed a notice of appeal with this court, but we dismissed the appeal, reasoning that the appellate department of the superior court was the proper forum for review—perhaps relying upon the apparent municipal court title and number. (A decision which, on further reflection, we now find questionable.) The People then dutifully appealed to that court, which not only reversed the judgment, but certified the case to us for decision on the issue of whether it, the appellate department, had jurisdiction over the case at all. We denied transfer on the basis that the certification was untimely. (See Cal. Rules of Court, rule 63.) Due to the present posture of the case, however, we need not resolve the interesting question presented by the appellate department and our own previous dismissal of the original appeal. We have jurisdiction at least in certiorari and habeas corpus to review the appellate department's decision even if the requirements for certification and/or transfer are not met. (See generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeals, § 725, p. 697.)

defendant's predicate conviction, that a felon could not possess a concealable firearm. Thereafter, the statute was amended to prohibit the possession of *any* firearm by an ex-felon. In rejecting defendant's ex post facto claim, we explained that although "it is true that the new statute only applies to defendant because he has the status of a convicted felon, and he achieved that status before that statute became effective[,] [n]evertheless, the new statute only applies to an event occurring after its effective date, i.e.[;] defendant's possession of a shotgun . . . ." (6 Cal.App.4th at p. 1285.) We held that defendant's conduct violated a new statute, not the one for which he had been previously convicted, and analogized to the application of newly enacted prior-felony enhancements as applied to convictions antedating the effective date of the enhancement statutes. Such statutes, as we noted, are regularly applied to preenactment convictions. (*Id.* at p. 1287; see *People* v. *Jackson* (1985) 37 Cal.3d 826, 833 [210 Cal.Rptr. 623, 694 P.2d 736] [overruled on other grounds in *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 (243 Cal.Rptr. 688, 748 P.2d 1150)] and *People* v. *Green* (1995) 36 Cal.App.4th 280, 283 [42 Cal.Rptr.2d 249].) *Mills* has been followed in *Helmer* v. *Miller* (1993) 19 Cal.App.4th 1565, 1571 [25 Cal.Rptr.2d 8] and controls here.[8]

We also reject Evans's contention that his 1992 plea was invalid because he was not informed of the *future* consequences of his plea. Contrary to his assertion, this is not a constitutional issue; the requirement of advisement of the consequences of a plea is judicially created, not constitutional. (*In re Ronald E.* (1977) 19 Cal.3d 315, 322 [137 Cal.Rptr. 781, 562 P.2d 684].) Assuming that the issue was properly raised in the format chosen by petitioner, he failed to establish by competent evidence that he would not have entered the plea had he known of the future consequence. (See *In re Moser* (1993) 6 Cal.4th 342, 352 [24 Cal.Rptr.2d 723, 862 P.2d 723]; *In re Ronald E., supra,* 19 Cal.3d at p. 325; *People* v. *Castaneda* (1995) 37 Cal.App.4th 1612, 1622 [44 Cal.Rptr.2d 666].) We do note, however, that our rejection of this claim would not preclude Evans from raising it in the future, for example if he were to be prosecuted for violating section 12021, subdivision (c).

■ We turn now to Evans's equal protection argument. It has merit.

Following the various additions and amendments to the statute, misdemeanants subject to the firearms prohibition fall into three classes: 1) peace

---

[8]Although the People filed no response in the trial court, Evans very properly drew the court's attention to both *Mills* and *Helmer*. However, Evans made no sensible argument distinguishing these cases on the ex post facto issue. It is not clear why the trial court did not feel obligated to follow precedent from a higher court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Zimmerman* (1993) 15 Cal.App.4th Supp. 7, 10 [19 Cal.Rptr.2d 486].)

officers convicted of spousal battery, violating a domestic violence restraining order, or stalking; 2) any misdemeanant who suffered the conviction of *any* qualifying misdemeanor before January 1, 1991; and 3) misdemeanants who suffered the qualifying conviction *after* January 1, 1991. Persons falling into the first two categories may seek relief from the prohibition; those in the third category, such as Evans, cannot. Obviously petitioner is not treated similarly to those in the first two categories. The question which we must determine is whether the distinctions drawn by the Legislature are constitutionally permissible.

█ The equal protection clauses are found in the Fourteenth Amendment to the United States Constitution and section 7, subdivison (a) of article I of the California Constitution. The scope and effect of the two clauses is the same. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

The crux of the constitutional promise of equal protection is that persons similarly situated shall be treated equally by the laws. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) However, neither clause prohibits legislative bodies from making classifications; they simply require that laws or other governmental regulations be justified by sufficient reasons. The necessary quantum of such reasons varies, depending on the nature of the classification.

Legislation which discriminates on the basis of a "suspect class" or touches on a fundamental right is subject to judicial examination under the "strict scrutiny" test. (See, e.g., *Loving* v. *Virginia* (1967) 388 U.S. 1 [18 L.Ed.2d 1010, 87 S.Ct. 1817]; *Board of Supervisors* v. *Local Agency Formation Co.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198].) However, most legislation challenged under the equal protection clause is evaluated merely for the existence of a "rational basis" supporting its enactment. (*Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 446 [87 L.Ed.2d 313, 324, 105 S.Ct. 3249]; Tribe, American Constitutional Law (2d ed. 1988) § 16-3, p. 1444, fn. 10.) Under the latter analysis, the question is whether the classification bears a fair relationship to a legitimate public purpose. (*Plyler* v. *Doe* (1982) 457 U.S. 202, 217 [72 L.Ed.2d 786, 799, 102 S.Ct. 2382].)

█ The People argue that the rational basis test applies here, and we agree. The classification of misdemeanants does not involve a typically suspect classification such as race or sex. (E.g., *Loving* v. *Virginia, supra.*) The *private* right to bear arms is not a "fundamental" right under the Second Amendment to the United States Constitution. (*United States* v. *Cruikshank*

(1876) 92 U.S. 542, 553 [23 L.Ed. 588, 591-592]; *United States* v. *Nelsen* (8th Cir. 1988) 859 F.2d 1318, 1320; *Pencak* v. *Concealed Weapon Licensing Bd.* (E.D.Mich. 1994) 872 F.Supp. 410, 413-413.) However, we find that the classification fails even under this standard.

Evans attacks the special treatment given to peace officers under the current statute, but we find no constitutional defect here. It will be recalled that it is limited to those convicted of offenses which tend to arise out of troubled personal relationships. Legislative history materials indicate that one reason for the provision was that the failure to allow for any appeal of the firearms prohibition might well discourage defendants from pleading guilty under an agreement for mandatory counselling—considered a "valuable tool" in such cases, which may be uniquely suited to disposition by counselling rather than punishment. Although this appeal provision is now limited to peace officers, and does not extend to *any* person whose occupation requires the use of a firearm, the distinction is rational. Few other occupations *require* the ability to possess a firearm and none that we can think of is of such a skilled, professional, and typically long-term nature as is law enforcement. The Legislature could have reasonably determined that other persons subject to the firearms prohibition could obtain alternative employment.

However, the statute also allows *any* person who suffered a qualifying conviction before January 1, 1991, to petition for relief. At its inception, this provision too had a sensible purpose. It allowed those who had been convicted (and in most cases, committed the offense) before the firearms prohibition became law to seek relief, presumably out of what the Legislature saw as a matter of fairness. In fact, it remains a reasonable addition to the statute.

The problem is that persons who suffered qualifying convictions *after* January 1, 1991, but *before* the misdemeanors of which they were convicted were added to the statute, cannot seek relief even though conceptually they are situated exactly the same as are the pre-1991 misdemeanants. In both cases the convictions were suffered at a time when the conviction carried no consequence relating to firearms. One group of such misdemeanants can seek relief under section 12021, subdivision (c)(3), but the other, which includes Evans, cannot.

One possible basis for the distinction would be the nature of the crimes committed, but this cannot withstand scrutiny. For one thing, it is obvious that the Legislature does not think that the domestic/stalking cases should, as a rule, be treated more rigidly than the others included in section 12021,

subdivision (c). Furthermore, it is impossible to make a rational distinction *unfavorable* to Evans between the offenses included when the statute was expanded to cover some misdemeanors in 1990, and those offenses added in 1993.

The original version included such offenses as threatening public officials, assault with a deadly weapon, and shooting at an occupied dwelling. (§§ 71, 76, 245, 246.) These offenses are certainly no less serious than simple assault, spousal abuse, or violation of a restraining order; there is no rational basis for allowing a misdemeanant convicted of assault with a deadly weapon to seek relief, while the defendant convicted of simple assault cannot. Thus, the statute cannot be sustained on this theory.

The People assert, however, that the distinctions between those covered by the 1990 law and the 1993 version are justified as a matter of *timing*. They argue that by 1994—when the 1993 version became effective—those persons (other than peace officers under section 12021, subdivision (c)(2)) who were permitted to seek relief could show at least three years of good behavior in support of their application. This argument fails for two reasons.

First, when the original provision for relief was added in 1991, it allowed covered misdemeanants to seek relief after a minimum lapse of only *one* year, and in fact appears to have been designed to ameliorate the "surprise" factor of the new enactment; there was no requirement for any particular duration of good behavior. More significantly, there is no provision for post-1991 misdemeanants to seek relief at *any* time during the 10-year period of disability, no matter how unblemished a record they may compile. Even accepting the People's argument at face value, it is irrational, in the constitutional sense, to allow some misdemeanants to seek relief after one, three, or five years of good behavior, but to bar other misdemeanants from seeking such relief after seven or nine years of law-abiding virtue.

In our view, the distinction drawn by the statute is probably inadvertent. We strongly suspect that in rewriting what is now section 12021, subdivision (c)(3), the Legislature simply failed to take into consideration the fact that *new* misdemeanors had been added to subdivision (c)(1) since the time of its original enactment, thus creating a new group of "surprised" misdemeanants whose post-1991 convictions had not, at the time suffered, subjected them to section 12021. In making this presumption, we bear in mind the Legislature's evident 1991 concern to provide an avenue for relief to those misdemeanants whose earlier convictions had not subjected them to the firearms prohibition in determining the remedy in this case.

We find section 12021, subdivision (c) unconstitutional in that it denies the opportunity for relief to post-1991 misdemeanants who suffered qualifying convictions at a time when the convictions did not subject them to the

firearms prohibition because the misdemeanors of which they were convicted had not yet been added to the statute.[9] However, this does not mean either that no firearms prohibition is proper, or that no defendant can seek relief.

 " 'Where a statute is defective because of underinclusion [as here], there exist two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the Legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.' " (*Califano* v. *Westcott* (1979) 443 U.S. 76, 89 [61 L.Ed.2d 382, 393, 99 S.Ct. 2655], quoting Mr. Justice Harlan's concurring opinion in *Welsh* v. *United States* (1970) 398 U.S. 333, 361 [26 L.Ed.2d 308, 330-331, 90 S.Ct. 1792].) Our Supreme Court has also recently recognized the power of the courts of this state not only to construe statutes in favor of constitutionality (an impossible task here due to the clear language of section 12021), but also to "reform" them. (*Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607 [47 Cal.Rptr.2d 108, 905 P.2d 1248], *passim.*) It has noted the frequent use of this judicial power in equal protection cases by the United States Supreme Court, including the decision in *Califano* v. *Westcott.*

In choosing between nullification and extension, a court must, of course, consider the presumed desires of the Legislature if faced with the same decision. (*Heckler* v. *Matthews* (1984) 465 U.S. 728, 739, fn. 5 [79 L.Ed.2d 646, 656, 104 S.Ct. 1387]; *Kopp* v. *Fair Pol. Practices Com., supra*, 11 Cal.4th at p. 635.) In this case, the decision is a simple one. Since 1991 the Legislature has evidenced a consistent concern for those convicted of pre-1991 misdemeanors and thus "surprised" by the addition of misdemeanor offenses to section 12021. There is clearly no legislative policy against offering an avenue of relief from the firearms prohibition. Furthermore, the fact that a post-1991 misdemeanant convicted of one of the offenses added to the statute in 1993 may *seek* relief from the firearms prohibition does not mean that he will *get* it. Subdivision (c)(3) requires the court to find that the petitioner is likely to use a firearm in a safe and lawful manner, and that he does not have any *other* convictions under the subdivision; it is vested with broad discretion not only in whether or not to grant relief, but in fashioning

---

[9]In light of this conclusion, we need not reach, inter alia, Evans's arguments based on substantive due process. To some extent the protection offered by that concept overlaps that of equal protection; both prohibit governmental action which is "arbitrary, irrational, or capricious" or does not bear a "real and substantial relation to the object sought to be obtained." (*Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1124-1125 [278 Cal.Rptr. 346, 805 P.2d 300].) In this case both the firearms prohibition and the provisions for relief are reasonable approaches to a valid goal; however, the distinctions drawn could well be deemed arbitrary within the meaning of substantive due process.

conditions of relief. Thus, the mere extension of the statute's reach will not result in the arming of large numbers of dangerous persons.

Accordingly, we conclude that the provisions of section 12021, subdivision (c)(3) must be extended to *all* those who committed qualifying misdemeanors at a time when the offenses were not listed in section 12021, subdivision (c), and thus did not subject them to a firearms prohibition. The judgment of the appellate department is reversed, and the matter is remanded to the municipal court with directions to consider Evans's petition on its merits as brought under subdivision (c)(3).

Ramirez, P. J., and Richli, J., concurred.