Filed 10/6/23; Modified and Cert. for Partial Pub. 10/31/23 (order attached); names redacted in opinion per order

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ZACHARY H., | D081250 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 22FDV01972N) |
| TERI A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Sara Kirby, Commissioner. Affirmed.

Oscar Valencia for Defendant and Appellant.

Decker Law and James D. Decker for Plaintiff and Respondent.

This case involves a complicated relationship between a mother, Teri A., and her son, Zachary H. Throughout his high school and college years, Zachary H. felt that Teri A. attempted to exercise control over his life, including his romantic relationships and income. During a tense period in their relationship, Zachary H. moved out of Teri A.'s home and informed her that he did not want to have further contact. Over Zachary H.'s repeated objections, Teri A. continued to reach out to him by mail, text message, e-mail, and by showing up to his home unannounced. Zachary H. claimed that after he moved out, Teri A. nearly ran him over with her car as he walked along the sidewalk near his residence. Following this incident, Teri A. sent Zachary H. a series of e-mails that caused him significant emotional distress. In one e-mail she called him pathetic, and in another she discussed her newly developed interest in firearms.

Immediately after receiving Teri A.'s e-mail referencing firearms, Zachary H. sought a domestic violence restraining order (DVRO). During the DVRO hearing, the trial court found Zachary H.'s testimony—describing Teri A.'s repeated unwanted contact and the incident in which she nearly ran him over—to be credible. It concluded that the evidence established Zachary H. was in reasonable apprehension of imminent serious bodily harm and issued a DVRO for a period of one year, including a related firearms prohibition.

On appeal, Teri A. claims the trial court abused its discretion by issuing the DVRO because it was not supported by substantial evidence and because the DVRO resulted from evidentiary errors by the trial court. She further contends the firearms prohibition violated her constitutional rights under the Second and Fourteenth Amendments to the United States Constitution. As we discuss, we conclude the court did not abuse its

discretion when it issued the DVRO. We further determine that the firearms restriction issued in conjunction with the DVRO was constitutional. We therefore affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Zachary H. filed a request for a DVRO against Teri A. in April 2022. The trial court held a hearing that took place on two nonconsecutive days in August and October 2022. Both parties testified at the hearing.

During Zachary H.'s testimony, he provided the court with the background of his relationship with Teri A. He described incidents of violence throughout his childhood in which Teri A. hit him with a wooden spoon, slapped him with a wet hand, and made him kneel on uncooked rice that she scattered on the floor. Zachary H. alleged that while he was in college, Teri A. took his paychecks and cashed them without his consent. He felt that Teri A.'s behavior was aimed at manipulation and control, including her attempts to influence his romantic relationships.

In October 2020, Zachary H. informed Teri A. that he intended to move out of her home at the end of the month. In response, Teri A. told him, " 'No, you're not, get your shit now and get the hell out of my house.' " Zachary H. moved out of Teri A.'s home to an apartment complex nearby. Although he did not share the location of his new residence with Teri A., she sent Zachary H. a text message a few weeks later stating, "[H]ave fun at [the name of Zachary H.'s new apartment complex]." Zachary H. testified that Teri A.'s text message "created a great sense of emotional distress and mental distress, because [he] didn't feel safe." Following her text message, Zachary H. told Teri A. that he did not want to have any further contact with her.

In July 2021, Teri A. went to Zachary H.'s home unannounced. Although Zachary H. did not interact with Teri A., he observed her standing

3

at his front door through his Ring door camera. Less than two weeks later, Teri A. again went to Zachary H.'s residence unannounced, this time on his birthday. Teri A. left a present at his doorstep and Zachary H. observed her "pacing back and forth and then ultimately going up and pounding on what actually was [Zachary H.'s] neighbor's window." Again in August, Teri A. went to Zachary H.'s home unannounced for a third time and dropped off some of Zachary H.'s childhood belongings. Zachary H. felt unsafe and emotionally distressed because Teri A. repeatedly ignored his requests to stay away and refrain from contacting him.

In October 2021, Zachary H. and his girlfriend encountered Teri A. driving her vehicle as they walked along a sidewalk. They hid in a bush to avoid her and then ran towards their apartment building. Teri A. made a U-turn and drove onto the curb, nearly running them over. As Zachary H. started to film Teri A. using his cell phone's camera,[1] he heard her giggle and say "run, [Zachary H.'s girlfriend], run, run, [Zachary H.], run, run . . . ." Teri A. got out of her vehicle and continued to follow Zachary H. on foot. Zachary H. testified he "was scared for [his] life at that point" because Teri A. attempted to hit him with her car.

Two days later, Zachary H. again encountered Teri A. in her vehicle as he walked along the sidewalk. She slowed her car as she drove in the center median, and attempted to communicate something to Zachary H. Zachary H. testified that Teri A. was smiling and laughing at him. He felt terrified by the experience and no longer felt safe walking outside alone.

---

[1] The video recording was admitted into evidence and reviewed by the trial court. The court noted that the video did not record most of the incident in the manner described by Zachary H., showing only the sidewalk as Zachary H. ran away. The court specifically found, however, that Teri A. could be heard at the beginning of the video saying the word "run."

4

Two months later, in December 2021, Teri A. went to Zachary H.'s home unannounced. She left an easter basket from Zachary H.'s childhood at his doorstep. Through his Ring camera, Zachary H. observed Teri A. bend down and examine mail that was left at his front door.

In response to her repeated unwanted contact, Zachary H. e-mailed Teri A. and told her, "[S]top leaving objects in the way of my apartment. You are not welcome here and I do not want any contact with you as well as my roommate. Examining mail that is not mine is not welcomed either. Do not harass me while I walk down the road either as there is no justifiable reason to be doing so." Teri A. continued to e-mail Zachary H. from January through March 2022.

On March 10, Zachary H. arrived home and noticed Teri A.'s vehicle "inching slowly next to the curb by [his] apartment." He started recording the incident and Teri A. drove away. Later that day, Teri A. sent Zachary H. an e-mail that said, "you are pathetic" in the subject line, and "truly pathetic" in the body of the e-mail. Zachary H. testified he felt distressed because "she was not respecting [his] wishes that [he] had stated multiple times at this point to refrain from contact."

On April 29, 2022, Teri A. sent Zachary H. and his sister a series of e-mails. The first e-mail contained images of a text message exchange between Teri A. and a third party. Teri A. and the third party discussed parenting and she expressed gratitude to the third party for his advice regarding firearms. Teri A. sent a second e-mail later that day stating, "I did forget to mention that in my first e-mail today I talk about guns. Yes I am shooting now and I am part of [A Girl & A Gun] nationwide group. Tony and I talk guns now. [¶] I am good with a pistol but prefer an AR."

Zachary H. was "extremely distressed" by Teri A.'s e-mail discussing firearms because she was previously "anti-firearms." He felt that Teri A.'s reference to firearms was "utilized as an intimidation factor, as a scare tactic." Within thirty minutes of receiving the e-mail, Zachary H. went to the courthouse to seek a restraining order. Zachary H. testified that his sister also sought and obtained a restraining order against Teri A. in the state of Arizona. The trial court took judicial notice of the restraining order involving Zachary H.'s sister.

In her testimony, Teri A. denied Zachary H.'s claims that she was physically violent with him during in his childhood. Rather, she claimed that Zachary H.'s father was an alcoholic and that the violent episodes testified to by Zachary H. were perpetrated by his father. Teri A. felt her relationship with Zachary H. became strained after her divorce from his father, and further deteriorated when Zachary H. began dating his girlfriend.

Teri A. told the court that when Zachary H. moved out of her residence, he rented an apartment in a complex less than a mile away. Due to his close proximity to her home, Teri A. encountered Zachary H. while driving her vehicle because he walked along the "path in and out of [her] neighborhood." She explained that she learned of Zachary H.'s new address because she received notice from the post office. She repeatedly dropped off Zachary H.'s belongings at his apartment because she found the items as she cleaned out her garage in segments.

Teri A. also testified regarding the October 2022 incident in which Zachary H. claimed she nearly ran him over with her car. She explained that she attempted to contact Zachary H. as he walked along the sidewalk to inform him that her aunt passed away. Teri A. claimed that as she attempted to tell Zachary H. about her aunt's funeral through the car

6

window, he ran down the sidewalk "laughing and giggling and ducking behind cars." She denied attempting to run him over and claimed that it would have been impossible for her to drive onto the curb because there were cars parked along the sidewalk.

Teri A. also provided context for the e-mails she sent to Zachary H. and his sister discussing firearms. She testified that she sent the text message exchange so that her children could see a different perspective regarding their relationship and the difficulty of parenting. Her purpose in sending the e-mail referencing her preference for an "AR" over a pistol was to convey to her children that she had moved on her with life and was exploring other interests.

Following Teri A.'s testimony, the trial court rendered its decision. In deciding to issue the requested restraining order, the court expressly found Zachary H. to be credible, including his testimony that he repeatedly told Teri A., orally and in writing, to leave him alone. It determined that the evidence clearly established Zachary H. did not want to be contacted by Teri A., and that Teri A. understood Zachary H.'s request for no-contact but "just didn't think that she should listen to that or that she thought she knew better." The court did not believe Teri A.'s contact with Zachary H. during these incidents was "an issue of being in the same neighborhood and accidentally coming upon somebody." Rather, it characterized the case as one in which Teri A. intentionally and repeatedly interacted with Zachary H. after he expressly communicated that he did not want to have any contact.

The court also believed Zachary H.'s testimony regarding the October 2022 incident in which Teri A. "nearly ran over [Zachary H.] and his girlfriend." In its view, the evidence established that Zachary H. was in "reasonable apprehension of imminent serious bodily injury to himself or

7

another regarding that October 16th incident about driving up on the curb and nearly—per [Zachary H.'s] testimony, nearly running him over and his girlfriend over that day." By a preponderance of the evidence, it found that Zachary H. met his burden of demonstrating his need for a DVRO.

The court granted Zachary H.'s request for a permanent restraining order and issued the DVRO for a period of one year. As a result of the restraining order, the court prohibited Teri A. from owning, possessing, or having access to any firearms or ammunition while the DVRO was in effect.

## DISCUSSION

Teri A. contends the DVRO was not supported by substantial evidence such that its issuance was an abuse of the trial court's discretion. Relatedly, she argues the trial court erred on several evidentiary matters, including improperly taking judicial notice of an out-of-state restraining order issued for the protection of Teri A.'s daughter, and allowing Zachary H. to introduce three exhibits not included in his exhibit list. Finally, she objects to the firearms prohibition issued in conjunction with the DVRO on various constitutional grounds. As we discuss, we perceive no reversible error in the evidence considered by the trial court and determine the court did not abuse its discretion in granting Zachary H.'s request for a DVRO. As to the firearms restriction, we conclude that the order prohibiting Teri A. from possessing a firearm or ammunition, and the statute authorizing the issuance of the restriction, are constitutional. We therefore affirm.

A.    *The Trial Court Did Not Abuse its Discretion in Granting the DVRO*

The Domestic Violence Protection Act (DVPA) (Fam. Code,[2] § 6200 et seq.) authorizes a court to issue a protective order " ' "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act of acts of abuse." ' " (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 225.)  "Abuse includes 'plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another' or 'engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320.' [Citation.]  Enjoined conduct includes molesting, striking, stalking, threatening, or harassing.  [Citation.]  The DVPA requires a showing of past abuse by a preponderance of the evidence." (*Id.* at p. 226; accord § 6320, subd. (a).)

"We review an order granting or denying a DVRO for abuse of discretion.  [Citation.]  In reviewing the trial court's factual findings, we apply the substantial evidence rule.  [Citation.]  The inquiry is whether substantial evidence supports the court's finding, not whether a contrary finding might have been made.  [Citation.]  We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment." (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143–1144.)

Teri A. argues the trial court's order was not supported by substantial evidence because the court improperly interpreted Teri A.'s "benign behavior" as abuse under the DVPA.  She urges us to reject the court's credibility findings pertaining to Zachary H.'s testimony because it "accepted statements from [Zachary H.] without truly examining their validity."  In support of her

---

2      Unspecified statutory references are to the Family Code.

argument, Teri A. emphasizes her own testimony, which proffered competing explanations of the events testified to by Zachary H.[3]

During the hearing, the trial court expressly found Zachary H. to be credible, specifically including his testimony about how Teri A. drove her vehicle onto a curb and nearly ran over Zachary H. and his girlfriend. As a result of this incident, it properly concluded that Teri A.'s conduct qualified as abuse under the DVPA because it placed Zachary H. "in reasonable apprehension of imminent serious bodily injury." (§ 6203, subd. (a)(3).) Although Teri A. argues that Zachary H.'s testimony, which she characterizes as "unsupported," provided insufficient evidence to justify the issuance of the DVRO, the testimony of a single witness may constitute substantial evidence to support a finding of fact. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119 (*F.M. & M.M.*) [" 'The testimony of one witness, even that of a party, may constitute substantial evidence' "].) Thus, Zachary H.'s testimony that Teri A. placed him in apprehension of serious bodily injury when she nearly hit him with her car provided substantial evidence of abuse under the DVPA.

Teri A.'s argument that Zachary H.'s apprehension of harm was not reasonable under the circumstances, considering that he moved less than a mile away from her home, asks us to disregard the trial court's credibility findings and reweigh the evidence. We decline to do so. "[T]rial courts are in

---

[3] In her opening brief on appeal, Teri A. cites to unpublished case law in violation of the California Rules of Court, rule 8.1115. She asserts that rule 8.1115(b) permits her to cite to unpublished authority in this case. However, rule 8.1115(b) permits citation to an unpublished opinion only when the opinion is relevant under the doctrines of the law of the case, res judicata, collateral estoppel, or when the opinion is relevant to a criminal or disciplinary action. None of the enumerated exceptions in rule 8.1115(b) apply to this case and we decline to consider this authority.

the best position to assess witness credibility" and therefore we must generally defer to their credibility determinations. (*Doe v. Lee* (2022) 79 Cal.App.5th 612, 621; accord *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823 [" 'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.' "].) We also note that during his testimony, Zachary H. provided context for his decision to move to an apartment complex near Teri A.'s home, explaining that there were limited apartments available during the COVID-19 pandemic and the residence he ultimately rented was the only one available to him during that time.

Further, although the trial court did not expressly find that Teri A.'s conduct disturbed Zachary H.'s peace, we conclude substantial evidence supports such an implied finding as an additional basis for the issuance of the DVRO. Under the DVPA, abuse includes conduct that, under the totality of the circumstances, " 'disturb[s] the peace of the other party' " in a way that "destroys the mental or emotional calm of the other party." (§ 6320, subd. (c); see also *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 [" '[D]isturbing the peace of the other party' " refers to conduct that, based on the totality of the circumstances, "destroys the mental or emotional calm of the other party."].) Repeated unwanted contact by phone, e-mail, and text, and unannounced home visits following a request of no-contact, may constitute disturbing someone's peace under section 6320. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144.)

Zachary H. testified that Teri A. repeatedly contacted him after he expressed to her, orally and in writing, that he did not wish to have any further interaction. Despite his requests, she continued to e-mail Zachary H. and go to his home unannounced. Zachary H. testified that the recurring

11

unwanted contact caused him mental and emotional distress. Zachary H.'s testimony, and the video recordings of Teri A.'s visits to his home, are ample evidence of conduct that disturbed Zachary H.'s peace. Although Teri A. claimed she was simply attempting to communicate with her son to discuss family matters and to deliver family heirlooms, the trial court was not required to credit Teri A.'s testimony over that of Zachary H. (*F.M. & M.M., supra*, 65 Cal.App.5th at p. 119 [" 'A trier of fact is free to disbelieve a witness . . . if there is a rational ground for doing so.' "].)

Finally, we do not perceive any abuse of discretion in the evidence considered by the trial court in rendering its decision, including its judicial notice of an out-of-state restraining order issued against Teri A. (See *Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182 ["We review judicial notice rulings for abuse of discretion"].) As Teri A. acknowledges in her opening brief, Evidence Code section 452 permitted the trial court to take judicial notice of the restraining order as a record from a "court of record of the United States or of any state of the United States." (*Id.*, subd. (d).) Although the trial court was not permitted to judicially notice the truth of any factual assertions within the DVRO (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1396 ["[w]e can take judicial notice of the fact the pleadings were filed, but not of the truth of the statements contained in them"]), there is no evidence in the record to suggest the trial court improperly considered the statements within the order. Further, during her own testimony, Teri A. admitted that her daughter obtained the judicially noticed restraining order against her. To the extent Teri A. suggests the order was not properly authenticated, she forfeited this argument by failing to object on these grounds in the trial court.

(See *People v. Sims* (1993) 5 Cal.4th 405, 448 [appellant forfeited authentication argument by failing to object at trial].)

Nor do we find merit in Teri A.'s argument that the court's consideration of three exhibits not included in opposing counsel's exhibit list—exhibits 11, 12, and 13 (videos of Teri A. near Zachary H.'s home)—violated her due process rights. The record does not indicate these exhibits were ever formally admitted, but assuming they were considered by the court, we perceive no abuse of discretion in the decision to admit them. (*McDermott Ranch, LLC v. Connolly Ranch, Inc.* (2019) 43 Cal.App.5th 549, 559 ["We review a trial court's decision to admit evidence for abuse of discretion."].) Although it does not appear that Zachary H.'s counsel complied with Superior Court of San Diego County, Local Rules, rule 5.5.5(C), which required counsel to timely serve a notice of their intent to lodge that included a description of their exhibits, Teri A. cites to no authority suggesting that the court has no discretion to excuse such a failure. In any event, considering that the exhibits were only seconds long and provided to opposing counsel prior to the hearing, and that Zachary H. independently described the events depicted in the exhibits, we conclude that any purported error related to the admission of the evidence was not prejudicial. (*F.M. & M.M., supra,* 65 Cal.App.5th at p. 118 [to establish prejudicial error relating to the admission of evidence at a DVRO hearing, the appellant must demonstrate a " ' " 'reasonable probability that in the absence of . . . error, a result more favorable to the appealing party would have been reached' " ' "].) The trial court expressly based its findings on Zachary H.'s testimony, which the court found to be credible, and therefore the absence of the video evidence would not have resulted in a more favorable result for Teri A.

In sum, we conclude the trial court's findings were supported by substantial admissible evidence of abuse under the DVPA. Accordingly, we perceive no abuse of discretion in the issuance of the DVRO and we affirm the order.

B.    *The Firearms Prohibition Did Not Violate Teri A.'s Constitutional Rights*

Teri A. argues for the first time on appeal that the firearms prohibition imposed by the trial court violated her Second Amendment rights. She contends that because the court's order did not allow her to possess a firearm for self-protection, the order conflicts with the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. ___ [142 S.Ct. 2111] (*Bruen*). According to Teri A., had the trial court prohibited her from possessing a firearm in public, but allowed her to possess a firearm in her home for self-protection, the order would have passed constitutional muster. She additionally argues that because section 6389, subdivision (h) provides an exception to the firearms relinquishment requirement based on employment, but not based on the need for self-protection, the statute violates the equal protection clause of the Fourteenth Amendment. As we discuss, we disagree with Teri A.'s assertions and conclude the firearms prohibition imposed by the trial court, and the statute on which it was based, are constitutional.

As a preliminary matter, we make clear that we do not consider Teri A.'s "as-applied" challenge to the firearms restriction because she forfeited this claim by failing to object in the trial court. (*People v. Patton* (2019) 41 Cal.App.5th 934, 946 (*Patton*) ["An as-applied constitutional challenge is forfeited unless previously raised."].) We construe Teri A.'s claim to be, at least partially, an as-applied challenge because she asserts the need for an exception to the firearms restriction based on a purported individualized need

14

for self-protection and her desire to attend "A Girl & A Gun" meetings. (*In re D.L.* (2023) 93 Cal.App.5th 144 ["[A]n 'as applied' challenge may seek 'relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied"].) Because an as-applied challenge asserts a "constitutional defense [that] may be correctable only by examining factual findings in the record or remanding to the trial court for further findings" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 (*Sheena K.*)), it is not appropriately raised for the first time on appeal. We do, however, consider Teri A.'s facial challenges to section 6389 because "the forfeiture rule does not extend to facial constitutional challenges presenting pure questions of law that can be resolved without referring to the particular [trial] record developed below." (*Patton, supra*, 41 Cal.App.5th at p. 946; accord *Sheena K. supra,* 40 Cal.4th at p. 889 [a facial constitutional challenge may be raised for the first time on appeal].)

Section 6389 prohibits an individual subject to a DVRO from possessing a firearm or ammunition. (§ 6389; see also § 6218.) In *Altafulla v. Ervin* (2015) 238 Cal.App.4th 571 (*Altafulla*), this court upheld section 6389 following a Second Amendment challenge to the statute. We concluded that section 6389 is "analogous to a prohibition on felon weapon possession," which is a constitutionally valid restriction on an individual's right to possess a firearm. (*Altafulla,* at p. 581.) In our discussion, we explained that the United States Supreme Court decision in *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), which held that the Second Amendment confers an individual right to keep and bear arms, did not affect the constitutionality of section 6389. (*Heller,* at pp. 581–582.)

15

The United States Supreme Court's recent decision in *Bruen*, which reaffirmed *Heller'*s guarantee of the right of "law-abiding responsible citizens" to possess firearms, does not compel a different result. (*Bruen, supra,* 142 S.Ct. at p. 2131.) In *Bruen*, the United States Supreme Court held that New York's public-carry licensing scheme violated the Second Amendment because "it prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (*Id.* at p. 2156.)

Here, however, the court's findings in issuing the DVRO demonstrate that Teri A. is not a law-abiding citizen. Moreover, as Justice Alito emphasized in his concurring opinion*,* "nothing about who may lawfully possess a firearm" was affected by the United States Supreme Court's decision in *Bruen*, nor has it disturbed "restrictions that may be imposed on the possession or carrying of guns." (*Bruen, supra,* 142 S.Ct. at p. 2157 (conc. opn. of Alito, J.).) Since *Bruen*, numerous California courts have held that the *Bruen* decision does not extend to statutes prohibiting the possession of firearms by individuals convicted of a felony, or statutes criminalizing the possession of illegal firearms. (See *People v. Alexander* (2023) 91 Cal.App.5th 469, 480 [rejecting Second Amendment challenge to statutes prohibiting individuals convicted of felonies from possessing firearms or ammunition]; *People v. Bocanegra* (2023) 90 Cal.App.5th 1236, 1250 [rejecting Second Amendment challenge to a statute prohibiting possession of an assault weapon].) Having previously concluded in *Altafulla* that section 6389 is analogous to a prohibition on "felon weapon possession," and recognizing the California cases that uphold the prohibition of "felon weapon possession" post-*Bruen*—we conclude that *Bruen* does not call into question the

lawfulness of firearms restrictions imposed on individuals subject to restraining orders.[4]

Apart from the Second Amendment, Teri A. also asserts that section 6389, subdivision (h), violates the equal protection clause of the Fourteenth Amendment by allowing an exception to the DVRO-related firearms prohibition based on employment, but not based on an individual's need for self-protection. The Fourteenth Amendment to the United States Constitution " 'guarantee[s] all persons the equal protection of the laws.' " (*In re Williams* (2020) 57 Cal.App.5th 427, 433.) An analysis of an equal protection claim under the Fourteenth Amendment has two steps. (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1102.) " ' " 'The first prerequisite . . . is a showing that the state has adopted a classification that affects two or more *similarly* situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for *all* purposes, but 'whether they are similarly situated for purposes of the law challenged.' " ' [Citation.] If the groups are similarly situated, the next

---

[4]    We recognize the Court of Appeals for the Fifth Circuit recently held that 18 U.S.C. section 922(g)(8), a federal statute prohibiting an individual subject to a restraining order from possessing a firearm, is unconstitutional in light of *Bruen*. (*United States v. Rahimi* (2023) 61 F.4th 443.) As we emphasized in *Altafulla*, however, " 'anger management issues may arise in domestic settings,' and a firearm restriction in such cases 'is thus a temporary burden during a period when the subject of the order is adjudged to pose a particular risk of further abuse.' " (*Altafulla, supra,* 238 Cal.App.4th at p. 582.) " 'Reducing domestic violence is a compelling government interest [citation], and [a] temporary prohibition, while the [restraining] order is outstanding, is narrowly tailored to that compelling interest.' " (*Ibid.*) Considering the compelling government interest to reduce domestic violence that we recognized in *Altafulla*, we decline to follow *Rahimi*. (See *People v. Williams* (2013) 56 Cal.4th 630, 668 [federal court of appeal decisions are not binding on California courts].)

question is whether the disparate treatment can be justified by a constitutionally sufficient state interest." (*Ibid*.)

Here, Teri A.'s equal protection argument necessarily fails because individuals seeking an exception to the firearms prohibition based on their employment are not similarly situated with individuals who present a generalized claim of the need to protect themselves with a firearm. Section 6389, subdivision (h) allows for a narrow exception to the firearms prohibition mandated by subdivision (a) if the restrained party demonstrates a firearm "is necessary as a condition of continued employment and that the current employer is unable to reassign the [restrained party] to another position where a firearm or ammunition is unnecessary." Teri A. cites to no authority suggesting this narrow class of individuals, for whom firearms are a necessary part of their employment, are similarly situated with individuals who generally desire a firearm to protect themselves. Nor can we find any precedent that would support such a claim—indeed, such a conclusion would signify that the general public is similarly situated with a group seeking relief from a court-ordered restriction based on a narrow employment-based statutory exception.[5]

_____

[5] Courts have addressed equal protections claims challenging statutory exceptions to court-imposed firearms limitations in the context of restrictions resulting from criminal convictions. In *People v. Delacy* (2011) 192 Cal.App.4th 1481, 1495, the court evaluated a criminal statute that prohibited the possession of firearms by persons convicted of certain California misdemeanors, but did not prohibit the possession of firearms by persons convicted of similar offenses from other jurisdictions. Although the court did not explicitly address whether the challenge involved similarly situated groups, it upheld the law, concluding that the Legislature's decision to exclude out-of-state misdemeanants from the law did not violate equal protection. In *People v. Conley* 116 Cal.App.4th 566, 574 (*Conley*), the court considered an equal protection challenge to a criminal statute that permitted relief from a firearms restriction for individuals convicted of three

But even assuming the "similarly situated" requirement has been met, section 6389, subdivision (h), does not violate equal protection under the Fourteenth Amendment. "[E]qual protection is not violated by a legislative scheme that distinguishes between different groups of persons if the classification bears a rational relationship to a legitimate public purpose." (*Conley, supra,* 116 Cal.App.4th at p. 574.) When a legislative classification that distinguishes between different groups " 'does not involve a fundamental right, we evaluate the classification under the "rational basis" test.' " (*Ibid.*) "The *private* right to bear arms is not a 'fundamental' right under the Second Amendment to the United States Constitution" (*In re Evans* (1996) 49 Cal.App.4th 1263, 1270), and we therefore analyze an equal protection claim implicating the private right to bear arms under the deferential rational basis test. Under this test, we "uphold a statutory classification against an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " (*Conley,* at p. 574.)

Here, the employment exception delineated in section 6389, subdivision (h), permits only a limited category of individuals whose economic well-being would be jeopardized by a firearms restriction to seek an exception to maintain their employment. This exception is especially narrow—it allows an individual to obtain an exception to the firearms prohibition only when their employment requires them to possess a firearm *and* when they make a showing that their employer is unable to reassign them to a position that

enumerated criminal offenses, but not for individuals convicted of other criminal offenses. Again the court did not directly address the similarly situated prong, but ultimately concluded that the legislative distinction between the convictions that required a firearms restriction, and those that did not, was constitutional. (*Ibid.*)

does not require a firearm. (§ 6389, subd. (h).) Even when an individual makes such a showing, they are only permitted to possess a firearm during their work hours and during travel to and from their employment. (*Ibid.*)

Considering that " 'reducing domestic violence is a *compelling* government interest" (*Altafulla, supra*, 238 Cal.App.4th at p. 582, italics added), the Legislature was justified in crafting such a narrow exception in section 6389, subdivision (h). Unlike the broad exception Teri A. seeks that would permit her to possess a gun in her home without any restrictions, the employment-based exception in section 6389, subdivision (h), appropriately balances the need to protect victims of domestic violence from the possibility of gun violence, with the economic interests of the restrained party. (See *U.S. v. Hayes* (2009) 555 U.S. 415, 427 ["Firearms and domestic strife are a potentially deadly combination nationwide."].) The limited nature of the firearms exception in section 6389 is rationally supported by a legislative interest in prohibiting those who have committed acts of domestic violence from having ready access to a firearm.

We therefore affirm the affirm the order prohibiting Teri A. from possessing a firearm while the DVRO is in effect.

DISPOSITION

The order is affirmed.  Zachary H. is entitled to costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.

CERTIFIED FOR PARTIAL PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ZACHARY H.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TERI A.,<br><br>    Defendant and Appellant. | D081250<br><br>(Super. Ct. No. 22FDV01972N)<br><br>ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION<br>FOR PARTIAL PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

The court on its own motion orders this opinion, filed on October 6, 2023, modified as follows:

1. Throughout the opinion, Appellant's name shall now be "Teri A." and the Respondent's name shall now be to "Zachary H."

2. The first paragraph of page 2, the first sentence ending "and her son Zachary H." (see item 1, *ante*), add as footnote 1 the following footnote, which will require renumbering of all subsequent footnotes:

    We refer to Teri A. and Zachary H. by their first names for clarity, intending no disrespect.

3. On page 16, the second sentence of the first paragraph, delete the words "United States Supreme" to that the sentence reads:

In *Bruen*, the Court held that New York's public-carry licensing scheme violated the Second Amendment because "it prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."

4. On page 16, the second paragraph, beginning "Here, however," is deleted and the following paragraph is inserted in its place:

Here, however, the trial court's findings in issuing the DVRO demonstrate that Teri is not a law-abiding citizen.   Indeed, the court found Zachary's testimony, in which he alleged Teri nearly ran him over with her car, to be credible.   Moreover, as Justice Alito emphasized in his concurring opinion*,* "nothing about who may lawfully possess a firearm" was affected by the Court's decision in *Bruen*, nor has it disturbed "restrictions that may be imposed on the possession or carrying of guns." (*Bruen, supra,* 142 S.Ct. at p. 2157 (conc. opn. of Alito, J.).)  Since *Bruen*, numerous California courts have held that the *Bruen* decision does not extend to statutes prohibiting the possession of firearms by individuals convicted of a felony, or statutes criminalizing the possession of illegal firearms.  (See *People v. Alexander* (2023) 91 Cal.App.5th 469, 480 [rejecting Second Amendment challenge to statutes prohibiting individuals convicted of felonies from possessing firearms or ammunition]; *People v. Bocanegra* (2023) 90 Cal.App.5th 1236, 1250 [rejecting Second Amendment challenge to a statute prohibiting possession of an assault weapon].)  Having previously concluded in *Altafulla* that section 6389 is analogous to a prohibition on "felon weapon possession," and recognizing the California cases that uphold the prohibition of "felon weapon possession" post-*Bruen*—we conclude that *Bruen* does not call into question the lawfulness of firearms restrictions imposed on individuals subject to restraining orders.[fn]

3

5. On page 19, the fourth sentence of the first paragraph that begins " 'The *private* right to bear arms' " is modified so that the sentence reads:

> "The *private* right to bear arms is not a 'fundamental' right under the Second Amendment to the United States Constitution" (*In re Evans* (1996) 49 Cal.App.4th 1263, 1270), and we therefore analyze an equal protection claim implicating the private right to bear arms by persons subject to a restraining order under the deferential rational basis test.

In addition, based on the sentence above, after the words "under the deferential rational basis test," add as footnote 7 (see item 2, *ante*) the following footnote, which will require renumbering of all subsequent footnotes:

> Following the United States Supreme Court's decision in *Heller,* and its later decision in *McDonald v. City of Chicago* (2010) 561 U.S. 742, the court in *Delacy, supra,* 192 Cal.App.4th 1481 "called into question" the conclusion in *Evans* that the private right to bear arms is never a fundamental right. (*Id.* at p. 1494.) Even so, addressing an equal protection claim by a defendant convicted of a misdemeanor, the *Delacy* court nonetheless applied a rational basis test because persons found to have engaged in criminal misconduct "can claim no 'fundamental' right that would invoke elevated scrutiny under the equal protection clause." (*Id.* at p. 1495.) Having previously determined that Teri is not among those law-abiding citizens for whom the Second Amendment guarantees the right to bear arms under *Heller and Bruen*, we similarly conclude the rational basis test applies to the review of her equal protection challenge.

There is no change in judgment.

4

FURTHER, this opinion was not certified for publication. It appearing the opinion meets the standards for partial publication, except part A of the discussion specified in California Rules of Court, rule 8.1100, the request pursuant to rule 8.1120(a) for partial publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

IT IS ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be partially published except part A of the discussion in the Official Reports.

O'ROURKE, Acting P. J.

Copies to:  All parties